# 13 MISC 00110

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

In re Application of KREKE IMMOBILIEN
KG, Petitioner,

To Issue a Subpoena To Deutsche Bank AG,
for Production of Documents and Testimony
for Use in a Foreign Proceeding

Civil No.:



RECEIVED
MAR 27 2013
U.S.D.C. S.D. N.Y.
CASHIERS

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF KREKE IMMOBILIEN KG FOR ORDER PURSUANT TO 28 U.S.C. §1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................ii

PRELIMINARY STATEMENT..........................................................................1

FACTUAL BACKGROUND..............................................................................2

ARGUMENT........................................................................................................7

I.   THE COURT HAS AUTHORITY TO PERMIT KREKE IM. TO TAKE
     DISCOVERY FROM DEUTSCHE BANK FOR USE IN A FOREIGN
     PROCEEDING BECAUSE THE STATUTORY REQUIREMENTS
     ARE MET...................................................................................................7

    A.   Kreke Im. is an Interested Person in an Impending Action Before a
         Foreign Tribunal, Satisfying the First and Third Factors.............................9

    B.   Kreke Im. Seeks Evidence, in the Form of Testimony and Documents,
         From Deutsche Bank AG, Which is Found in the Jurisdiction of This
         Court, Satisfying the Second and Fourth Factors.......................................9

II.  THE DISCRETIONARY FACTORS FAVOR GRANTING THE
     REQUESTED DISCOVERY....................................................................12

    A.   The Nature and Character of the German Proceedings Support the
         Court's Assistance ...................................................................................12

    B.   There is No Intention to Circumvent German Proof-Gathering
         Restrictions ...............................................................................................12

    C.   The Discovery Sought is Not Unduly Burdensome...................................13

    D.   Deutsche Bank is Not a Party to the German Proceeding, so the
         Court's Assistance is Necessary................................................................14

    E.   Other Discretionary Factors:  Vindicating Statutory Intent........................14

CONCLUSION.................................................................................................15

i

Applicant Kreke Immobilien KG ("Kreke Im.") files this Memorandum in Support of its Ex Parte Application for an Order of discovery pursuant to 28 U.S.C. §1782. Section 1782 authorizes entities with an interest in a foreign proceeding to obtain discovery from entities found in the United States for use in those foreign proceedings. Kreke Im., which is a plaintiff in a civil case about to be filed in Germany, seeks an Order authorizing its counsel to serve discovery in the form attached hereto as Exhibits A and B on Deutsche Bank AG ("Deutsche Bank"), through its offices located in New York City, New York, requiring Deutsche Bank to provide targeted documents and related deposition discovery, respectively, relevant to and for use in the German proceedings.

## PRELIMINARY STATEMENT

Kreke Im.'s application relates to litigation it will shortly bring in the District Court (Landgericht) of Cologne, Germany. In Germany, Kreke Im. has gone through a mediation process with Sal. Oppenheim jr. & Cie. AG & Co. KGaA ("Oppenheim"), a wholly-owned subsidiary of Deutsche Bank, in connection with Kreke Im.'s net investment of almost €30 million in real-estate investment funds fraudulently marketed by Oppenheim and managed by an Oppenheim partnership in breach of that partnership's and Oppenheim's duties to Kreke Im. A copy of Kreke Im.'s Application for Conciliation (translated from the original German) is attached as Exhibit 1 to the Declaration of Dr. Stefan Kraus. The mediation was not successful and thus litigation is imminent. The civil action will assert claims of fraud, breach of duty, and breach of contract substantially similar to those detailed by, and based on the facts alleged in, the Application for Conciliation.

Kreke Im.'s application meets the statutory requirements and discretionary factors established for discovery under Section 1782. In accordance with the statute, Kreke Im. seeks

1

discovery from an entity (Deutsche Bank) which is located in this district; for Kreke Im.'s use in an imminent proceeding before a foreign tribunal (the District Court of Cologne); and in which Kreke Im. will be the plaintiff, and hence an interested party.

Kreke Im.'s application also satisfies the discretionary factors identified by the Supreme Court in <u>Intel Corp. v. Advanced Micro Devices, Inc</u>. and its progeny. German courts are receptive to discovery under Section 1782 and courts in this district have routinely furnished judicial assistance to German courts through such discovery orders. Kreke Im.'s application is not an attempt to circumvent the German courts' proof-gathering requirements. The discovery sought is not unduly burdensome or intrusive. Deutsche Bank itself is not a named party in the German proceedings; rather, its subsidiary Oppenheim is the named party and committed the alleged wrongful acts well before Deutsche Bank purchased it in 2010. Finally, the Second Circuit has urged district courts to use their discretion creatively and expansively in order to realize the intent of Congress to demonstrate the virtues of the American-style liberal discovery regime as a truth-finding instrument. The documents and testimony Kreke Im. seeks will assist the German court in assessing, on a fully-developed factual record, the extent to which Oppenheim engaged in fraud, breach of duty, and breach of contract.

For these reasons and others set forth more fully below, Kreke Im. respectfully asks the court to grant its application for discovery under Section 1782.

## FACTUAL BACKGROUND

### A.    Kreke Im., Oppenheim, and Deutsche Bank

Kreke Im. is a German limited partnership formed to manage assets of the Kreke family. Dr. Henning Kreke and Dr. Jörn Kreke, both German citizens, function as the general partners of Kreke Im. The limited partners of Kreke Im. include the children of Dr. Henning Kreke, each

of whom has U.S. citizenship. The objective of the Kreke partnership is to make conservative real-estate investments and obtain returns in the form of rental and lease income.

Oppenheim is a leading German private bank, based in Cologne, and has been operating since 1789. Its focus is asset management for private clients with high net worth, institutional clients, and investment funds, including real-estate investment funds. In March 2010, Deutsche Bank acquired Oppenheim for €1 billion, and Oppenheim became a wholly-owned subsidiary of Deutsche Bank.

Deutsche Bank is a German bank that maintains a significant presence in New York through its U.S. headquarters located at 60 Wall Street. It claims to be one of the largest foreign-based employers in New York City, and to have over 11,000 U.S. employees. Deutsche Bank conducts systematic and continuous business activities in New York.

In the course of its acquisition of Oppenheim, Deutsche Bank obtained and reviewed files relevant to the investments at issue in Kreke Im.'s imminent lawsuit against Oppenheim, which were stored in paper and electronic "data rooms." As part of the due diligence process, Deutsche Bank received the "Freshfields Report" from its advisors, a thorough and systematic analysis alerting Deutsche Bank to potentially-troubling aspects of the investments at the heart of Kreke Im.'s lawsuit.[1] In addition to its control over documents received during the due diligence process, after acquiring Oppenheim as a wholly-owned subsidiary, Deutsche Bank gained control of the documents possessed by Oppenheim. In fact, Deutsche Bank announced that it had consolidated the operations of Oppenheim into its own banking business. (Exhibit 2 to Declaration by P. R. Goldstone.)

---

[1] The "Freshfields Report" and its content have been the subject of extensive press coverage in Germany. See Exhibit 2 to the Declaration of Dr. Stefan Kraus.

### B. The Real-Estate Investment Funds

Prior to Deutsche Bank's acquisition of Oppenheim, Oppenheim successfully solicited Kreke Im.'s investment in three closed-end real-estate investment funds. An Oppenheim partner, Mr. Detlef Bierbaum, knew Dr. Jörn Kreke from their service together on the board of Douglas Holding AG. Mr. Bierbaum advised Dr. Jörn Kreke of investment opportunities in what were known as the Oppenheim-Esch closed-end real-estate funds. Oppenheim then offered the investments directly to Kreke Im.

Oppenheim's sales strategy to Kreke Im. emphasized that the Oppenheim-Esch funds were primarily designed for the personal investment purposes of Oppenheim partners and the families of its shareholders. According to Oppenheim and Mr. Bierbaum, it was only for tax reasons that a small portion of the Oppenheim-Esch funds were opened up to external investors. In other words, the funds were pitched as special investment products purportedly being offered to a select number of hand-picked clients of the bank. These representations proved to be materially false, as the funds were primarily marketed to and funded by Oppenheim's high net worth investment clients and were designed principally to generate greatly inflated fee income to Oppenheim (and Esch).

Oppenheim claimed that the underlying real-estate investments would consist solely of high-quality properties leased to long-term tenants with impeccable credit ratings. According to Oppenheim, this meant that any investment would be particularly safe. The investment strategy and risk profile described by Mr. Bierbaum and Oppenheim matched the conservative investment goals of Kreke Im. These representations also proved to be materially false.

Oppenheim sent Dr. Jörn Kreke summaries for three different Oppenheim-Esch real-estate funds, emphasizing each time that the investments were being offered only to partners at

4

the bank, its shareholders, and its closest clients. The Kreke Im. limited partnership eventually made a total of almost €30 million in commitments to three such Oppenheim-Esch real-estate funds invested in commercial real estate projects, beginning in 2000.[2]

Kreke Im. eventually came to learn that the Oppenheim-Esch real-estate funds were fraudulently marketed. They have massive fees that result in an exorbitant cost structure. Their economic projections rely on misrepresented rents. They are corrupted by undisclosed self-dealing transactions between Oppenheim- and Esch-controlled entities, including kickback schemes.

For example, "soft costs" charged to investors (e.g., servicing fees not related to the cost of the property or construction) in the Oppenheim-Esch real-estate funds amount to 30-40% of the total investments in the funds. These fees far exceed market rates. Oppenheim failed to disclose or omitted material facts concerning many of these costs.

Significantly, one of the reasons the soft costs reached such exorbitant levels was because Oppenheim falsely inflated those costs. For example, fund investors were charged considerable commissions for first-time leasing even when fund projects were planned from the outset for tenants that had already committed. Fund investors were likewise charged fees for finance sourcing when finance partners were already available.

Even more troublingly, and also not adequately disclosed, where soft costs were allocated to certain services rendered to the funds, those services were invariably provided by Oppenheim- or Esch-controlled entities. Self-dealing is rampant in the Oppenheim-Esch real-estate funds, extending to virtually every link of the value-added chain in real-estate project finance, development, and management.

---

[2] In accordance with Oppenheim's investment model, Kreke Im.'s investments were significantly leveraged and its capital commitments financed through various Oppenheim- and Esch-controlled entities

The reason the soft costs were so great is now obvious:  Oppenheim got half of them, a fact never disclosed in the summaries sent to prospective investors.

In order to attract investors, Oppenheim also falsely represented or failed to disclose material facts concerning project tenants and lease rates.  Oppenheim represented that the underlying real estate was already leased to reputable tenants under long-term leases with conditions that appeared to make the investment profitable in the projections Oppenheim presented to the investors, including Kreke Im.  In order for these projections to show profits, Oppenheim relied on the first tenants paying above-market rents, which presumably would then be maintained even after the initial lease terms had expired.

Those initial above-market rents, however, were only made possible by an improper scheme Oppenheim implemented with the first tenants.  In short, Oppenheim used straw-man first tenants who agreed to above market rents in exchange for kickbacks.  Sparkasse KölnBonn, managed at the time by Gustav Adolf Schröder, was often a partner in these schemes, acting as de facto co-initiator and as interim tenant or rent guarantor for numerous Oppenheim-Esch fund properties.

Oppenheim further inflated its projections by overestimating and misrepresenting the floor space used as a basis for calculating rents.  Oppenheim would disclose to its investors, including Kreke Im., *gross* floor space, i.e., areas that included all internal walls, supply shafts and public roadways.  The gross floor space was often 15 to 20% larger than the actual rentable space.  Oppenheim did not disclose this non-standard calculation method, which served to further ensure that projected earnings did not match the market rates likely to be paid for the actual rentable space.

The Oppenheim-Esch real-estate funds are also rife with undisclosed conflicts of interest. Oppenheim funneled the soft-cost payments to numerous Oppenheim- and Esch-controlled entities, including design and build contractor Gebr. Esch Wohnbaugesellschaft mbH. This web of concealed self-dealing further enabled the fraud and ensured that Oppenheim could profit even as investors failed to realize the promised returns.

As a result of Oppenheim's fraudulent scheme, the Oppenheim-Esch funds in which Kreke Im. has invested have present values far less—from 35-70% less—than the amounts Oppenheim raised from investors like Kreke Im..

### C.   The Proceedings in Germany

Kreke Im. commenced a formal mediation against Oppenheim, Esch, their controlled companies and personally liable partners, in Hamburg, Germany on December 26, 2011, which terminated January 10, 2013, without a successful resolution.

Kreke Im. is now in the process of commencing suit against Oppenheim in the District Court (Landgericht) of Cologne for fraud, breach of duty, and breach of contract, based on the facts set forth above.

## ARGUMENT

I.   **THE COURT HAS AUTHORITY TO PERMIT KREKE IM. TO TAKE DISCOVERY FROM DEUTSCHE BANK FOR USE IN A FOREIGN PROCEEDING BECAUSE THE STATUTORY REQUIREMENTS ARE MET**

Under 28 U.S.C. §1782(a), federal courts can allow persons involved in legal proceedings before a foreign tribunal to obtain discovery from persons in the United States for use in those foreign proceedings. Section 1782(a) states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the

application of any interested person and may direct that the testimony or statement be given, or the document or other thing produced, before a person appointed by the court. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The Second Circuit has instructed that courts applying §1782 should do so "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997).

The United States Supreme Court, in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), resolved prior inter-circuit disagreement and established mandatory and certain discretionary factors that courts are directed to employ when considering discovery requests under §1782.

There are four mandatory factors a party seeking discovery under §1782 must show. First, the request must be made by either the tribunal or an "interested person"; parties to the litigation before the foreign tribunal are interested persons. Intel, 542 U.S. at 256 (2004). Second, the request must seek evidence, whether as testimony or documents. Third, the discovery must be "for use in a foreign or international tribunal," defined as a first-instance decision-maker. 28 U.S.C. §1782(a); Intel, 542 U.S. at 255. The Supreme Court also resolved previous disagreement among the circuits by instructing that the legal proceeding did not have to be "pending" or "imminent"; instead, the Court endorsed the more liberal standard that the proceeding need only be "within reasonable contemplation." Id. at 253, 256-63. Finally, the "person" subject to the discovery request must "reside" or be "found" in the district in which the application for discovery is filed. 28 U.S.C. §1782(a). All four mandatory factors are satisfied here.

8

### A. Kreke Im. is an interested person in an impending action before a foreign tribunal, satisfying the first and third factors

Kreke Im. is a party commencing a civil action in Germany, and therefore an "interested person" to a proceeding that is "within reasonable contemplation"—one, in fact, shortly to commence.   Kreke Im. has already undertaken mediation to resolve its dispute with Oppenheim and now, after the failure of this mediation attempt, is readying to file a civil action in the German courts.   Due to statute of limitation concerns, the civil action will be filed in Germany no later than the end of May 2013, before a German tribunal, the District Court (Landgericht) of Cologne, which acts as a first-instance decision-maker for civil claims.   Courts have stated repeatedly that a foreign litigant cannot be required to first exhaust all possible available remedies in the original foreign jurisdiction before requesting assistance from an American court under § 1782.   See, e.g., Euromepa S.A. v. R. Esmerian Inc., 51 F.3d 1095, 1098 (2d Cir. 1995); In re Malev, 964 F.2d 97, 100 (2d Cir. 1992).

### B. Kreke Im. seeks evidence, in the form of testimony and documents, from Deutsche Bank AG, which is found in the jurisdiction of this court, satisfying the second and fourth factors

Evidence is sought, in the form of testimony and documents, from Deutsche Bank AG. Deutsche Bank AG does extensive business in New York City, where it maintains offices on Wall Street; it has numerous affiliates registered with the New York Secretary of State; it has been party to over 250 lawsuits filed in the Southern District of New York; and its global general counsel operates out of its New York offices.   (Exhibits 5 through 7 to Declaration by P. R. Goldstone.)   Its website boasts that "Deutsche Bank is one of the largest foreign-based employers in New York City and the only investment bank physically located on Wall Street." (Exhibit 4 to Declaration by P. R. Goldstone.)   Deutsche Bank therefore "is found" or "resides"

in this district, and may appropriately be compelled to provide discovery of documents and materials in its possession, custody or control.

Many of the documents requested are in the direct possession of Deutsche Bank, but others may be held exclusively by Oppenheim, its wholly-owned subsidiary. Despite this, the documents held by Oppenheim are properly considered within the possession, custody, or control of its parent, Deutsche Bank. "Control" under the federal rules is construed as "the legal right, authority, or practical ability to obtain the materials sought upon demand," and is determined in a case-by-case factual inquiry. Sec. & Exch. Comm'n v. Credit Bancorp, Ltd., 194 F.R.D. 469, 471 (S.D.N.Y. 2000). Further, "documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise." Cooper Indus. v. British Aerospace Inc., 102 F.R.D. 918, 919 (S.D.N.Y. 1984). Where a company has "demonstrated access" to the documents held by a subsidiary or affiliate, the courts will find control. Zenith Electronics, LLC v. Vizio, Inc., Misc. No. M8-85, 2009 WL 3094889, at *1 (S.D.N.Y. Sept. 25, 2009).

Assuming the facts indicate control, even if the documents are located outside the United States and held by a foreign affiliate or subsidiary of a subpoena recipient, courts generally order production. Ssangyong Corp. v. Vida Shoes Int'l Inc., No. 03 CIV. 5014 KMW DFE, 2004 WL 1125659, at *2 (S.D.N.Y. May 20, 2004). Electronic documents, with their extraordinary ease of access and mobility and lack of physical corpus, may be especially susceptible to such control tests, as they readily meet the "practical ability to obtain the materials sought upon demand" test. Hence, if a subpoenaed party has "exclusive and complete access to documents residing on a third-party's server it is sufficient to establish [such entity's] 'control' over those documents and thus to impose on [such entity] an obligation to conduct an appropriate [electronically stored

information] search of those files." <u>Nycomed U.S. Inc. v. Glenmark Generics Ltd.</u>, No. 08-cv-5023, 2010 WL 3173785 (E.D.N.Y. Aug. 11, 2010).

Here, when it negotiated the purchase of Oppenheim, Deutsche Bank received the Freshfields Report, detailing numerous questionable or troubling aspects of the structure, operations, management, and financing of the investment funds in question.  In the acquisition process, Deutsche Bank would have generated its own documents regarding the Oppenheim-Esch investment funds at issue.  In addition, either as a result of the merger and acquisition process or the eventual purchase and integration of Oppenheim, Deutsche Bank would have received custody or control of the documents underlying the Freshfields Report's analysis of the funds.  Subsequent to the successful purchase of Oppenheim in its entirety, Deutsche Bank, as sole owner of Oppenheim, would have custody or control of any documents Oppenheim generated regarding these funds.  Deutsche Bank itself has publicly held itself out as assuming control over all Oppenheim operations and asset management.  Deutsche Bank AG would therefore have in its own custody and control directly such documents (electronically stored and physical), or the practical ability to access and obtain the same from its Oppenheim subsidiary.  Whether located in physical or electronic "data rooms" assembled during the acquisition negotiations and due diligence process or stored on electronic servers as part of the normal course of business, such documents are within the "practical ability" of Deutsche Bank to obtain, with "demonstrated access."

For this reason, the Court has statutory authority to permit discovery under §1782.

## II.   THE DISCRETIONARY FACTORS FAVOR GRANTING THE REQUESTED DISCOVERY.

The <u>Intel</u> Court also held that at least four additional discretionary factors "bear consideration" when courts weigh whether to permit discovery under §1782. <u>Intel</u>, 542 U.S. at 264-65.

### A.   The nature and character of the German proceedings support the Court's assistance.

The first discretionary factor courts consider is the nature and character of the foreign court and proceedings and whether the foreign court would be receptive to U.S. federal court judicial assistance. <u>Id</u>.   Courts in this district have routinely found that German tribunals are appropriate recipients of U.S. discovery assistance under §1782. <u>See, e.g.</u>, <u>In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf</u>, No. M19-88, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006); <u>In re Metallgesellschaft AG</u>, 121 F.3d 77 (2d Cir. 1997); <u>In re Federation Internationale de Basketball</u>, 117 F.Supp.2d 403 (S.D.N.Y 2000); and <u>In re Iwasaki Electric Co.</u>, No. M19-82, 2005 WL 1251787 (S.D.N.Y. May 26, 2005).   Furthermore, the Second Circuit has held that courts should not presume that foreign tribunals would object to §1782 assistance or take offense at such discovery merely because that foreign country has not adopted a similar discovery procedure. <u>Metallgesellschaft</u>, 121 F.3d at 80 (holding that a German court should not be assumed to reject evidence found pursuant to §1782 discovery rules more liberal than those of the tribunal itself).   Thus, this discretionary factor also favors the Applicant.

### B.   There is no intention to circumvent German proof-gathering restrictions.

The second discretionary factor for courts to consider is whether the application is "an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States." <u>Intel</u>, 542 U.S. at 265.   However, the U.S. Supreme Court made clear in <u>Intel</u> that there is no foreign discoverability bar.  In other words, applicants for §1782 discovery

are not restricted to the types of discovery permitted under the rules of the foreign tribunal. Id, at 246. Thus, the mere fact that the discovery sought here may not be permitted by the discovery rules of a German tribunal is not evidence of an attempt to circumvent German policies.

Indeed, in a recent case involving the most far-ranging discussion by an appeals court of what might constitute such circumvention, the Seventh Circuit examined a request for §1782 discovery in a German litigation. The court indicated that circumvention means bad faith discovery requests intended to harass, and listed several examples of action that might allow an inference of harassment, including seeking discovery of inadmissible evidence, evidence intended to overwhelm the foreign court, and duplicative discovery intended to impose unnecessary expense. Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 594-95 (7th Cir. 2011). None of these applies to Kreke Im., which seeks discovery of information and material that is not otherwise readily discoverable in Germany, that is neither needlessly duplicative nor intended to impose undue expense, that is not intended to overwhelm the foreign court, and that is not intended for the purpose of harassment. Thus, this discretionary factor should favor the Applicant.

## C.     The discovery sought is not unduly burdensome.

The third discretionary factor under Intel is whether the discovery sought is unduly intrusive or burdensome. Intel, 542 U.S. at 265. As evidenced by the attached Rule 45 subpoena, Kreke Im. seeks targeted information that is relevant to, or reasonably calculated to lead to information relevant to, the issues of fraud, breach of contract, and breach of fiduciary duty in the German civil action. Thus, this discretionary factor also favors Kreke Im.

**D.**    **Deutsche Bank is not a party to the German proceeding, so the Court's assistance is necessary.**

The final discretionary factor is whether the party from whom §1782 discovery is sought is already a party to the foreign legal proceeding.  If so, the need for §1782 assistance is less apparent than if the subject of §1782 discovery is a nonparticipant in the litigation abroad.  Intel, 542 U.S. at 264-65.  Here, Deutsche Bank is not a party to the civil suit in Germany; instead, the respondents include Deutsche Bank subsidiary Oppenheim and several of its fund affiliates and individual officers and business partners.  Deutsche Bank itself is not a named litigant.  The actions giving rise to the civil claims were all committed prior to Deutsche Bank's purchase of Oppenheim.  Some of the evidence sought was created by and for Deutsche Bank during the due diligence process in its acquisition of Oppenheim, when it would have become aware of the problematic nature of certain of the funds' activities; other documents may have been created by Oppenheim but were then turned over to Deutsche Bank during the course of the due diligence process.  Some portion of the evidence sought was originally generated by Oppenheim in the course of marketing, forming, financing, and operating the investment funds at issue and is still held by that firm, now a Deutsche Bank subsidiary.  To the extent that some evidence requested is still held by Oppenheim and Oppenheim alone, this may make the need for assistance less apparent, but still does not bar the court from exercising its discretionary authority.  Thus, this final discretionary factor may, on the whole, neither clearly favor nor disfavor a grant of §1782 discovery.

**E.**    **Other discretionary factors:  vindicating statutory intent.**

The above four factors are not exhaustive or exclusive.  Id. at 264.  Lower courts examining §1782 discovery requests have also included other factors in their assessments.  See In re Esses, 101 F.3d 873, 876 (2d Cir. 1996) ("Section 1782 grants district courts wide

discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems.")

The Second Circuit has adopted the position that district courts should actively advance 28 U.S.C. §1782's aims of demonstrating for foreign jurists the merits of the American liberal discovery regime. Euromepa S.A., v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995) ("We read section 1782's investment of broad discretion in district courts as an invitation for district judges to fashion creative means of implementing the statute's double goal....") Thus, consistent with the Second Circuit's instructions that district courts seek creative means to demonstrate the truth-finding virtues of liberal discovery rules, Kreke Im. should be granted §1782 discovery, whether the documents sought are electronic or physical, in immediate possession of Deutsche Bank or its subsidiary Oppenheim, because they are ultimately in the control of Deutsche Bank.

## CONCLUSION

For these reasons, Kreke Im. requests that the court enter an Order pursuant to 28 U.S.C. §1782 authorizing Kreke Im. to obtain discovery from Deutsche Bank as described in the proposed Rule 45 subpoena attached hereto.

Dated:  March 26, 2013                    Respectfully submitted,


                                          FAEGRE BAKER DANIELS LLP

                                          _Leif Simonson_

                                          Leif T. Simonson (LS-5915)
                                          2200 Wells Fargo Center
                                          90 South Seventh Street
                                          Minneapolis, MN  55402-3901
                                          Telephone:  (612) 766-7000
                                          _Leif.simonson@faegrebd.com_

                                          _Attorneys for Petitioner Kreke Immobilien KG_

# EXHIBIT A

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## For The
## SOUTHERN DISTRICT of NEW YORK

| | |
|---|---|
| **Kreke Immobilien, KG,** ) | |
| For an Order to Conduct Discovery ) | |
| for Use in Foreign Proceedings ) | |
| *Petitioner* ) | |
| ) | |
| Seeking Discovery from ) | Civil Action No. |
| ) | |
| **Deutsche Bank** ) | |
| *Respondent* ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION
## FOR USE IN A FOREIGN PROCEEDING

To:  Deutsche Bank, 60 Wall Street, New York, NY  10005

___X___ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
___SEE ATTACHMENT A___

| Place: | Date and Time: |
|---|---|
| **TSG Reporting** | **April 25, 9:30 a.m.,** or such time as |
| 747 Third Ave., NYC, NY 10017 | mutually agreed upon by counsel |

The deposition will be recorded by this method: Stenographic and/or videorecording._____

_____ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.
Date:

|  *CLERK OF COURT* | OR | *Leif Simon* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)***Kreke Immobilien KG,** who issues or requests this subpoena, are:  Leif Simonson, 90 S. Seventh Street, Minneapolis MN  55402, leif.simonson@faegrebd.com, 612-766-7000

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ **!D21 Is Not In Table** _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

### DEFINITIONS

1. The phrase "POSSESSION, CARE, CUSTODY OR CONTROL" shall mean possession, care, custody or control, including constructive possession, such that the respondent need not have actual physical possession of the DOCUMENT or thing, so long as the respondent has a right or ability in practice to compel the production from a third party entity (including an agency, subsidiary, division, authority, or service provider) having physical possession of the item.

2. As used herein, the term "OPPENHEIM" shall mean and refer to Sal. Oppenheim jr & Cie. AG & Co. KGaA, including Oppenheim's members, officers, partners, directors, contractors, employees, servants, representatives, legal predecessors, agents, subsidiaries (in particular the Oppenheim-Esch Holding GbR and its subsidiaries), affiliates, consultants, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on Oppenheim's behalf, either directly or indirectly.

3. As used herein, the term "DEUTSCHE BANK" shall mean and refer to Deutsche Bank AG, including Deutsche Bank's members, officers, partners, directors, contractors, employees, servants, representatives, agents, subsidiaries, affiliates, consultants, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on Deutsche Bank's behalf, either directly or indirectly.

4. As used herein, the term "ESCH" shall mean and refer to Josef Esch, with business address Christian-Esch-Str. 2-4, 53844 Troisdorf, Germany, or any and all companies, firms, partnerships, or business entities owned by, controlled by, or affiliated with him.

5.  As used herein, the term "OPPENHEIM-ESCH FUNDS" shall mean and refer to any and all German real-estate investment funds formed, financed, organized, managed, serviced or promoted, in whole or in part, by a combination of Oppenheim and Esch.

6.  As used herein, the term "KREKE IM." shall mean and refer to Kreke Immobilien, KG, or its partnership members, Dr. Henning Kreke and Dr. Jörn Kreke.

## FEDERAL RULE 30(b)(6) DEPOSITION TOPICS

1.  The creation, promotion, offering for sale, sale, management or operation of any of the Oppenheim-Esch funds, including but not limited to the Köln-Ossendorf V GbR Fund, Potsdam Brandenburger Straße GbR Fund, and the Bürohäuser Köln Rheinhallen GbR Fund, from 2000 to the present, and Deutsche Bank's possession, care, custody or control of documents or communications relating to same.

2.  Deutsche Bank's analysis of any claims against, government investigations into, or prosecutions of Sal. Oppenheim or its directors, officers, employees or partners regarding the Oppenheim-Esch funds, and Deutsche Bank's possession, care, custody or control of documents or communications relating to same.

3.  Oppenheim's communication with and solicitation of investors or possible investors for the Oppenheim-Esch funds, including but not limited to its meetings or communications with Kreke Im. or any individual associated with Kreke Im., and Deutsche Bank's possession, care, custody or control of documents or communications relating to same.

4.  Oppenheim's selection of potential investors in the Oppenheim-Esch funds and Deutsche Bank's possession, care, custody or control of documents or communications relating to same.

5.      Any internal analysis conducted by or for Sal. Oppenheim of costs, fees, profits, or performance of the Oppenheim-Esch funds (including but not limited to revenue from tenants, expenses for engineering and construction of buildings, and any remuneration owed to main contractors by Esch), and Deutsche Bank's possession, care, custody or control of documents or communications relating to same.

6.      Risk disclosures made to investors in the Oppenheim-Esch funds, and Deutsche Bank's possession, care, custody or control of documents or communications relating to same.

7.      Fees or other compensation received by Oppenheim in connection with the Oppenheim-Esch funds and Deutsche Bank's possession, care, custody or control of documents or communications relating to same.

8.      Deutsche Bank's possession, care, custody or control of documents in the actual physical data room made available to Deutsche Bank, in connection with its acquisition of Sal. Oppenheim, relating to the Oppenheim-Esch funds.

9.      Deutsche Bank's possession, care, custody or control of documents in the "virtual data room" made available to Deutsche Bank, in connection with its acquisition of Sal. Oppenheim, relating to the Oppenheim-Esch funds.

10.     Any report received by Deutsche Bank or Sal. Oppenheim from PriceWaterhouseCoopers, Ernst & Young, or any other accounting firm regarding the Oppenheim-Esch funds, and Deutsche Bank's possession, care, custody or control of documents or communications relating to any such report.

11.     Any report from German banking regulators, including the Federal Financial Supervisory Authority (known as BaFin) regarding any aspect of the Oppenheim-Esch funds,

and Deutsche Bank's possession, care, custody or control of documents or communications relating to any such German banking regulatory agency report.

12.     Any dealings between Sal. Oppenheim and Josef Esch or any entity owned or controlled in whole or in part by Mr. Esch, relating to the creation, financing, management, or operation of the Köln-Ossendorf V GbR Fund, Potsdam Brandenburger Straße GbR Fund, and the Bürohäuser Köln Rheinhallen GbR Fund, from 2000 to the present, and Deutsche Bank's possession, care, custody or control of documents or communications relating to such dealings.

13.     Any report or draft report prepared by the Freshfields law firm analyzing the Oppenheim-Esch funds and all documents reviewed in connection with such report or draft report, and Deutsche Bank's possession, care, custody or control of documents or communications relating to such report or draft report.

14.     Compensation by any Oppenheim or Esch-related entity to tenants in any Oppenheim-Esch funds project, and Deutsche Bank's possession, care, custody or control of documents or communications relating to any such compensation.

15.     Oppenheim's selection and solicitation of tenants for Oppenheim-Esch Fund projects, and Deutsche Bank's possession, care, custody or control of documents or communications relating to such selection and solicitation.

16.     Any notes, minutes, reports, or other records, written or otherwise, of due diligence meetings or other meetings between Deutsche Bank and Oppenheim regarding the Oppenheim-Esch funds, and Deutsche Bank's possession, care, custody or control of documents or communications relating to such meetings regarding the Oppenheim-Esch funds.

# EXHIBIT B

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Kreke Immobilien, KG | ) |
| *Petitioner* | )    For an Order to |
| | )    Conduct Discovery for |
| | )    Use in a Foreign |
| | )    Proceeding |
| | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CIVIL ACTION FOR USE IN A FOREIGN PROCEEDING

To:   Deutsche Bank AG, 60 Wall Street, New York, NY

    ☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

      SEE ATTACHED EXHIBIT A

| Place: | Date and Time: |
|---|---|
|     TSG Reporting<br>    747 Third Ave.<br>    NYC, NY 10017 | Within 30 days of the date of service. |

    ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _____, 2013

| CLERK OF COURT | | |
|---|---|---|
| | OR | *[signature]* |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Kreke Immobilien KG
_____, who issues or requests this subpoena, are:

Lief T. Simonson, FAEGRE BAKER DANIELS LLP,
2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402
Telephone: 612-766-7225; email: Robert.Schnell@faegrebd.com

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

_____

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: _____     _____
                                                   *Server's signature*

                                            _____
                                                   *Printed name and title*

                                            _____
                                                   *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT A

## DOCUMENTS TO BE PRODUCED

### DEFINITIONS

1. "And" includes the word "or" and vice-versa.

2. "Any" includes the word "all" and vice-versa.

3. As used herein, the terms "DOCUMENT" or "DOCUMENTS" shall include, without limitation and to the broadest extent permissible by Federal Rule of Civil Procedure 34, all COMMUNICATIONS in a tangible form, however produced, reproduced, or stored on any electronic media, and shall include, but not be limited to, the following: all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, papers, indices, letters, envelopes, telegrams, cables, telex messages, tabulations, work papers, timesheets, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, manuals, notes or summaries of telephone conversations or messages or other COMMUNICATIONS of any type, video recording, photographs, tape or other recordings, punch cards, discs, data cells, drums, printouts, and other data compilations from which information can be obtained, electronically-stored information, correspondence, teletype messages, electronic mail, instant messages, internal memoranda, agreements, diary entries, minute books, financial records, accounting records, income tax returns, ledgers, journals, audits, receipts, canceled checks, check stubs, drafts and other written, deeds, leases, mortgages, assignments, insurance policies, or other instruments related to real or personal property printed or typed matter, diagrams, plans, pictures, travel, entertainment, or expense records or reports or any other tangible thing that constitutes matter. The term "DOCUMENT" and "DOCUMENTS" shall also mean originals and exact copies or reproductions of all such written, printed, typed, recorded or graphic material or matter upon

which notations or markings in writing, print or otherwise have been made which do not appear in the originals.

4. The term "COMMUNICATION(S)" shall mean the transmittal of any information by any method and includes all meetings, discussions, telephone conversations, contracts, letters, e-mails, memoranda, correspondence, reports, statements, consultations, negotiations, estimates, purchase orders and any DOCUMENT relating thereto.

5. The phrase "RELATED TO" or "RELATING TO" shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, containing, embodying, identifying, dealing with, mentioning, defining, explaining, monitoring, modifying, quoting, criticizing, describing, creating or maintaining, bearing upon, constituting a basis for, deriving from or arising from, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

6. The phrase "POSSESSION, CARE, CUSTODY OR CONTROL" shall mean possession, care, custody or control, including constructive possession, such that the respondent need not have actual physical possession of the DOCUMENT or thing, so long as the respondent has a right or ability in practice to compel the production from a third party entity (including an agency, subsidiary, division, authority, or service provider) having physical possession of the item.

7. The term "PERSON" shall mean any individual, corporation, organization, association, partnership, enterprise, limited partnership, limited liability company, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

8.     As used herein, the term "OPPENHEIM" shall mean and refer to Sal. Oppenheim jr & Cie. AG & Co. KGaA, including Oppenheim's members, officers, partners, directors, contractors, employees, servants, representatives, legal predecessors, agents, subsidiaries (in particular the Oppenheim-Esch Holding GbR and its subsidiaries), affiliates, consultants, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on Oppenheim's behalf, either directly or indirectly.

9.     As used herein, the term "DEUTSCHE BANK" shall mean and refer to Deutsche Bank AG, including Deutsche Bank's members, officers, partners, directors, contractors, employees, servants, representatives, agents, subsidiaries, affiliates, consultants, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on Deutsche Bank's behalf, either directly or indirectly.

10.     As used herein, the term "KREKE" shall mean and refer to Kreke Immobilien, KG, or its partnership members, Dr. Henning Kreke and Dr. Jörn Kreke.

11.     As used herein, the term "ESCH" shall mean and refer to Josef Esch, with business address Christian-Esch-Str. 2-4, 53844 Troisdorf, Germany, or any and all companies, firms, partnerships, or business entities owned by, controlled by, or affiliated with him.

12.     As used herein, the term "OPPENHEIM-ESCH FUNDS" shall mean and refer to any and all German real-estate investment funds formed, financed, organized, managed, serviced or promoted, in whole or in part, by a combination of Oppenheim and Esch.

13.     As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

14.   The term "INCLUDING" is used without limitation to items or topics not specifically listed. "INCLUDING" is intended to illustrate the kind of information responsive to each request herein. Such examples are not intended to be exhaustive of the information sought and shall not in any way be read to limit the scope of the requests.

## INSTRUCTIONS

The following instructions shall govern the response and production of DOCUMENTS:

1.   Respondent shall furnish all requested documents in Respondent's possession, care, custody, or control at the time of production.

2.   In answering each discovery request, Respondent shall make a diligent search of Respondent's records and other papers and materials in Respondent's possession, custody, or control.

3.   In the event that any DOCUMENT called for by these Document Requests is withheld on the basis of a claim of privilege, that DOCUMENT is to be identified in a privilege log as follows: author(s); addressee(s); indicated or blind copy recipient(s); date; subject matter; number of pages; attachments or appendices; all persons to whom distributed, shown or explained; the present custodian(s); the nature of the privilege asserted; and the circumstances that give rise to the privilege.

4.   In the event that any DOCUMENT called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that DOCUMENT is to be identified as completely as possible, including, without limitation, the following information: author(s); addressee(s); indicated or blind copy recipient(s); date; subject matter; date of

disposal; reason for disposal; PERSON authorizing the disposal; the PERSON disposing of the DOCUMENT; and the last known location of the DOCUMENT.

5.  In the event that any information is redacted from a DOCUMENT produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

6.  In the event that multiple copies or versions of a DOCUMENT exist, produce all non-identical copies of the DOCUMENT, including any and all drafts of the DOCUMENT.

7.  All DOCUMENTS existing in electronic form shall be produced in electronic form in a manner to preserve, without alteration or modification, all meta-data associated with the electronic DOCUMENT, including without limitation extracted text.

8.  At the time and place of production of the DOCUMENTS requested herein, the DOCUMENTS requested are to be produced in the same order as maintained in the ordinary course of business.

9.  For each DOCUMENT produced, identify the specific Document Request category to which it is responsive.

10.  As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

11.  The Discovery Requests are ongoing. In the event that any DOCUMENTS or materials come to the Respondent's attention or possession, custody, or control after the filing of Respondent's responses hereto, which DOCUMENTS or materials are within the scope of any

request for production herein, said additional DOCUMENTS or materials shall be furnished to Movant's attorneys.

## DOCUMENTS TO BE PRODUCED BY DEUTSCHE BANK

1. All documents or communications relating to the creation, promotion, offering for sale, sale, management or operation of any of the Oppenheim-Esch funds, including but not limited to the Köln-Ossendorf V GbR Fund, the Potsdam Brandenburger Straße GbR Fund, and the Bürohäuser Köln Rheinhallen GbR Fund.

2. All documents or communications relating to any analysis by or for Deutsche Bank of any claims against, government investigations into, or prosecutions of Sal. Oppenheim or its directors, officers, employees or partners regarding any of the Oppenheim-Esch funds.

3. All documents or communications relating to any meetings or communications with or solicitations of investors or possible investors for any of the Oppenheim-Esch funds, including but not limited to meetings or communications with Kreke Im. or any individual associated with Kreke Im.

4. All documents or communications relating to Oppenheim's selection of potential investors in any of the Oppenheim-Esch funds.

5. All documents or communications relating to any internal analysis, conducted by or for Sal. Oppenheim, of costs, fees, profits, or performance of any of the Oppenheim-Esch funds, including but not limited to revenue from tenants, expenses for engineering and construction of buildings, and any remuneration owed to main contractors by Esch.

6. All documents or communications relating to the risk disclosures made to investors in the Oppenheim-Esch funds.

7.  All documents or communications relating to the fees or other compensation received by Sal. Oppenheim in connection with the Oppenheim-Esch funds.

8.  All documents in the actual physical data room made available to Deutsche Bank, in connection with its acquisition of Sal. Oppenheim, relating to the Oppenheim-Esch funds.

9.  All documents in the "virtual data room" made available to Deutsche Bank, in connection with its acquisition of Sal. Oppenheim, relating to the Oppenheim-Esch funds.

10.  Any report received by Deutsche Bank or Oppenheim from PriceWaterhouseCoopers, Ernst & Young, or any other accounting firm regarding the Oppenheim-Esch funds.

11.  Any report from German banking regulators, including the Federal Financial Supervisory Authority (known as BaFin) regarding any aspect of the Oppenheim-Esch funds.

12.  All documents or communications relating to any dealings between Oppenheim and Josef Esch or any entity owned or controlled in whole or in part by Mr. Esch, relating to the creation, financing, management, or operation of the Köln-Ossendorf V GbR Fund, the Potsdam Brandenburger Straße GbR Fund, and the Bürohäuser Köln Rheinhallen GbR Fund, from 2000 to the present.

13.  Any report or draft report prepared by the Freshfields law firm analyzing the Oppenheim-Esch funds and all documents reviewed in connection with such report or draft report.

14.  All documents or communications relating to compensation by any Oppenheim or Esch-related entity to tenants in any Oppenheim-Esch funds project.

15.  All documents or communications relating to Oppenheim's selection and solicitation of tenants in any Oppenheim-Esch funds project.

16. Any notes, minutes, reports, or other records, written or otherwise, of due diligence meetings or other meetings between Deutsche Bank and Oppenheim regarding the Oppenheim-Esch funds.