# EXHIBIT D

SAL. OPPENHEIM
Private Bank since 1789

# General Business Conditions

The present translation is furnished for the customer's convenience only. The original German text of the General Business Conditions is binding in all respects. In the event of any divergence between the English and the German texts, constructions, meanings, or interpretations, the German text, construction, meaning or interpretation shall govern exclusively.

## Basic Rules Governing the Relationship Between the Customer and the Bank

### 1. SCOPE OF APPLICATION AND AMENDMENTS OF THESE BUSINESS CONDITIONS AND THE SPECIAL CONDITIONS FOR PARTICULAR BUSINESS RELATIONS

**(1) Scope of application**
The General Business Conditions govern the entire business relationship between the customer and the bank's domestic offices (hereinafter referred to as the "Bank"). In addition, particular business relations (securities transactions, payment services and savings accounts, for example) are governed by Special Conditions, which contain deviations from, or complements to, these General Business Conditions; they are agreed with the customer when the account is opened or an order is given. If the customer also maintains business relations with foreign offices, the Bank's lien (No. 14 of these Business Conditions) also secures the claims of such foreign offices.

**(2) Amendments**
Any amendments of these Business Conditions and the Special Conditions shall be offered to the customer in text form no later than two months before their proposed date of entry into force. If the customer has agreed an electronic communication channel (e.g. online banking) with the Bank within the framework of the business relationship, the amendments may also be offered through this channel. The amendments shall be deemed to have been approved by the customer, unless the customer has indicated disapproval before their proposed date of entry into force. The Bank shall expressly draw the customer's attention to this consequent approval in its offer.
If the customer is offered amendments of conditions governing payment services (e.g. conditions for credit transfers), the customer may also terminate the payment services framework contract free of charge with immediate effect before the proposed date of entry into force of the amendments. The Bank shall expressly draw the customer's attention to this right of termination in its offer.

### 2. BANKING SECRECY AND DISCLOSURE OF BANKING AFFAIRS

**(1) Banking secrecy**
The Bank has the duty to maintain secrecy about any customer-related facts and evaluations of which it may have knowledge (banking secrecy). The Bank may only disclose information concerning the customer if it is legally required to do so or if the customer has consented thereto or if the Bank is authorized to disclose banking affairs.

**(2) Disclosure of banking affairs**
Any disclosure of details of banking affairs comprises statements and comments of a general nature concerning the economic status, the creditworthiness and solvency of the customer; no information shall be disclosed as to amounts of balances of accounts, of savings deposits, of securities deposits or of other assets entrusted to the Bank or as to amounts drawn under a credit facility.

**(3) Prerequisites for the disclosure of banking affairs**
The Bank shall be entitled to disclose banking affairs concerning legal entities and on businesspersons registered in the Commercial Register, provided that the inquiry relates to their business activities. The Bank shall not, however, disclose any information if it has received instructions to the contrary from the customer. Details of banking affairs concerning other persons, in particular private customers and associations, shall be disclosed by the Bank only if such persons have expressly agreed thereto,

Sal. Oppenheim jr. & Cie. AG & Co. KGaA   Unter Sachsenhausen 4   50667 Köln
Vorsitzender des Aufsichtsrats: Pierre de Weck   Persönlich haftende Gesellschafterin: Sal. Oppenheim jr. & Cie. Komplementär AG
Vorstand: Wilhelm von Haller (Vorsitzender), Dr. Gregor Broschinski, Jürgen Dobritzsch, Dr. Wolfgang Leoni
Telefon +49 221 145-01   Telefax +49 221 145-1512   E-Mail koeln@oppenheim.de   www.oppenheim.de
Postfach 10 27 43   50667 Köln   Amtsgericht Köln HRB 20121   USt-IdNr. DE 122786919

*Seite 1/10*

either generally or in an individual case. Details of banking affairs shall be disclosed only if the requesting party has substantiated its justified interest in the information requested and there is no reason to assume that the disclosure of such information would be contrary to the customer's legitimate concerns.

**(4) Recipients of disclosed banking affairs**
The Bank shall disclose details of banking affairs only to its own customers as well as to other credit institutions for their own purposes or those of their customers.

### 3. LIABILITY OF THE BANK; CONTRIBUTORY NEGLIGENCE OF THE CUSTOMER
**(1) Principles of liability**
In performing its obligations, the Bank shall be liable for any negligence on the part of its staff and of those persons whom it may call in for the performance of its obligations. If the Special Conditions for particular business relations or other agreements contain provisions inconsistent herewith, such provisions shall prevail. In the event that the customer has contributed to the occurrence of the loss by any own fault (e.g. by violating the duties to cooperate as mentioned in No. 11 of these Business Conditions), the principles of contributory negligence shall determine the extent to which the Bank and the customer shall have to bear the loss.

**(2) Orders passed on to third parties**
If the contents of an order are such that the Bank typically entrusts a third party with its further execution, the Bank performs the order by passing it on to the third party in its own name (order passed on to a third party). This applies, for example, to obtaining information on banking affairs from other credit institutions or to the custody and administration of securities in other countries. In such cases, the liability of the Bank shall be limited to the careful selection and instruction of the third party.

**(3) Disturbance of business**
The Bank shall not be liable for any losses caused by force majeure, riot, war or natural events or due to other occurrences for which the Bank is not responsible (e.g. strike, lock-out, traffic hold-ups, administrative acts of domestic or foreign high authorities).

### 4. SET-OFF LIMITATIONS ON THE PART OF THE CUSTOMER
The customer may only set off claims against those of the Bank if the customer's claims are undisputed or have been confirmed by a final court decision.

### 5. RIGHT OF DISPOSAL UPON THE DEATH OF THE CUSTOMER
Upon the death of the customer, the Bank may, in order to clarify the right of disposal, demand the production of a certificate of inheritance, a certificate of executorship or further documents required for such purpose; any documents in a foreign language must, if the Bank so requests, be submitted in a German translation. The Bank may waive the production of a certificate of inheritance or a certificate of executorship if an official or certified copy of the testamentary disposition (last will or contract of inheritance) together with the relevant record of probate proceedings is presented. The Bank may consider any person designated therein as heir or executor as the entitled person, allow this person to dispose of any assets and, in particular, make payment or delivery to this person, thereby discharging its obligations. This shall not apply if the Bank is aware that the person designated therein is not entitled to dispose (e.g. following challenge or invalidity of the will) or if this has not come to the knowledge of the Bank due to its own negligence.

### 6. APPLICABLE LAW AND PLACE OF JURISDICTION FOR CUSTOMERS WHO ARE BUSINESSPERSONS OR PUBLIC-LAW ENTITIES
**(1) Applicability of German law**
German law shall apply to the business relationship between the customer and the Bank.

SAL. OPPENHEIM
Private Bank since 1789

**(2) Place of jurisdiction for domestic customers**
If the customer is a businessperson and if the business relation in dispute is attributable to the conducting of such businessperson's trade, the Bank may sue such customer before the court having jurisdiction for the bank office keeping the account or before any other competent court; the same applies to legal entities under public law and separate funds under public law. The Bank itself may be sued by such customers only before the court having jurisdiction for the bank office keeping the account.

**(3) Place of jurisdiction for foreign customers**
The agreement upon the place of jurisdiction shall also apply to customers who conduct a comparable trade or business abroad and to foreign institutions which are comparable with domestic legal entities under public law or a domestic separate fund under public law.

## Keeping of Accounts

**7. PERIODIC BALANCE STATEMENTS FOR CURRENT ACCOUNTS**
**(1) Issue of periodic balance statements**
Unless otherwise agreed, the Bank shall issue a periodic balance statement for a current account at the end of each calendar quarter, thereby clearing the claims accrued by both parties during this period (including interest and charges imposed by the Bank). The Bank may charge interest on the balance arising therefrom in accordance with No. 12 of these Business Conditions or any other agreements entered into with the customer.

**(2) Time allowed for objections; approval by silence**
Any objections a customer may have concerning the incorrectness or incompleteness of a periodic balance statement must be raised not later than six weeks after its receipt; if the objections are made in text form, it is sufficient to dispatch these within the period of six weeks. Failure to make objections in due time shall be considered as approval. When issuing the periodic balance statement, the Bank shall expressly draw the customer's attention to this consequence. The customer may demand a correction of the periodic balance statement even after expiry of this period, but must then prove that the account was either wrongly debited or mistakenly not credited.

**8. REVERSE ENTRIES AND CORRECTION ENTRIES MADE BY THE BANK**
**(1) Prior to issuing a periodic balance statement**
Incorrect credit entries on current accounts (e.g. due to a wrong account number) may be reversed by the Bank through a debit entry prior to the issue of the next periodic balance statement to the extent that the Bank has a repayment claim against the customer (reverse entry); in this case, the customer may not object to the debit entry on the grounds that a disposal of an amount equivalent to the credit entry has already been made.

**(2) After issuing a periodic balance statement**
If the Bank ascertains an incorrect credit entry after a periodic balance statement has been issued and if the Bank has a repayment claim against the customer, it shall debit the account of the customer with the amount of its claim (correction entry). If the customer objects to the correction entry, the Bank shall re-credit the account with the amount in dispute and assert its repayment claim separately.

**(3) Notification to the customer; calculation of interest**
The Bank shall immediately notify the customer of any reverse entries and correction entries made. With respect to the calculation of interest, the Bank shall effect the entries retroactively as of the day on which the incorrect entry was made.

21.06.2012 12:45

B/MOP 70.001 (01/12) - 05.12

Sal. Oppenheim jr. & Cie. AG & Co. KGaA   Unter Sachsenhausen 4   50667 Köln
Vorsitzender des Aufsichtsrats: Pierre de Weck   Persönlich haftende Gesellschafterin: Sal. Oppenheim jr. & Cie. Komplementär AG
Vorstand: Wilhelm von Haller (Vorsitzender), Dr. Gregor Broschinski, Jürgen Dobritzsch, Dr. Wolfgang Leoni
Telefon +49 221 145-01   Telefax +49 221 145-1512   E-Mail koeln@oppenheim.de   www.oppenheim.de
Postfach 10 27 43   50667 Köln   Amtsgericht Köln HRB 20121   USt-IdNr. DE 122786919

## 9. COLLECTION ORDERS

**(1) Conditional credit entries effected upon presentation of documents**

If the Bank credits the countervalue of cheques and direct debits prior to their payment, this is done on condition of payment, even if these items are payable at the Bank itself. If the customer surrenders other items, instructing the Bank to collect an amount due from a debtor (e.g. interest coupons), and if the Bank effects a credit entry for such amount, this is done under the reserve that the Bank shall obtain the amount. This reserve shall also apply if the cheques, direct debits and other items are payable at the Bank itself. If cheques or direct debits are not paid or if the Bank does not obtain the amount under the collection order, the Bank shall cancel the conditional credit entry regardless of whether or not a periodic balance statement has been issued in the meantime.

**(2) Payment of direct debits and of cheques made out by the customer**

"Einzugsermächtigungslastschriften" and "Abbuchungsauftragslastschriften", as well as cheques, shall be deemed to have been paid, unless the debit entry is cancelled prior to the end of the second bank working day[1] after it was made. Direct debits from other schemes shall be subject to the payment rules in the Special Conditions agreed for these. Cheques payable in cash shall be deemed to have been paid once their amount has been paid to the presenting party. Cheques shall also be deemed to have been paid as soon as the Bank dispatches an advice of payment. Cheques presented through the clearing office of the Bundesbank shall be deemed to have been paid, unless they are returned by the time stipulated by the Bundesbank.

## 10. FOREIGN CURRENCY TRANSACTIONS AND RISKS INHERENT IN FOREIGN CURRENCY ACCOUNTS

**(1) Execution of orders relating to foreign currency accounts**

Foreign currency accounts of the customer serve to effect the cashless settlement of payments to and disposals by the customer in foreign currency. Disposals of credit balances on foreign currency accounts (e.g. by means of credit transfers to the debit of the foreign currency credit balance) are settled through or by banks in the home country of the currency, unless the Bank executes them entirely within its own organisation.

**(2) Credit entries for foreign currency transactions with the Customer**

If the Bank concludes a transaction with the customer (e.g. a forward exchange transaction) under which it owes the provision of an amount in a foreign currency, it shall discharge its foreign currency obligation by crediting the account of the customer in the respective currency, unless otherwise agreed.

**(3) Temporary limitation of performance by the Bank**

The Bank's duty to execute a disposal order to the debit of a foreign currency credit balance (paragraph 1) or to discharge a foreign currency obligation (paragraph 2) shall be suspended to the extent that and for as long as the Bank cannot or can only restrictedly dispose of the currency in which the foreign currency credit balance or the obligation is denominated, due to political measures or events in the country of the respective currency. To the extent that and for as long as such measures or events persist, the Bank is not obligated either to perform at some other place outside the country of the respective currency, in some other currency (including euros) or by providing cash. However, the Bank's duty to execute a disposal order to the debit of a foreign currency credit balance shall not be suspended if the Bank can execute it entirely within its own organisation. The right of the customer and of the Bank to set off mutual claims due in the same currency against each other shall not be affected by the above provisions.

**(4) Exchange rate**

The exchange rate for foreign currency transactions shall be determined on the basis of the "List of Prices and Services" (Preis- und Leistungsverzeichnis). Payment services shall be governed in addition by the payment services framework contract.

---

[1] Bank working days are all working days except Saturdays, 24 December and 31 December.

SAL. OPPENHEIM
Private Bank since 1789

## Duties of the Customer to Cooperate

**11. DUTIES OF THE CUSTOMER TO COOPERATE**
**(1) Notification of changes**
A proper settlement of business requires that the customer notify the Bank without delay of any changes in the customer's name and address, as well as the termination of, or amendment to, any powers of representation towards the Bank conferred to any person (in particular, a power of attorney). This notification duty also exists where the powers of representation are recorded in a public register (e.g. the Commercial Register) and any termination thereof or any amendments thereto are entered in that register. Additional statutory notification requirements, resulting from the German Money Laundering Act in particular, may apply.
**(2) Clarity of orders**
Orders must unequivocally show their contents. Orders that are not worded clearly may lead to queries, which may result in delays. In particular, when giving orders, the customer must ensure that the information the customer provides, particulary the domestic account number and bank code number ("Bankleitzahl") or IBAN[2] and BIC[3] and the currency, are complete and correct. Amendments, confirmations or repetitions of orders must be designated as such.
**(3) Special reference to urgency in connection with the execution of an order**
If the customer feels that an order requires particularly prompt execution, the customer shall notify the Bank of this fact separately. For orders issued on a printed form, this must be done separately from the form.
**(4) Examination of, and objections to, notification received from the Bank**
The customer must immediately examine account statements, securities contract notes, statements of securities holdings and earnings, other statements, advices of execution of orders, as well as information on expected payments and consignments (advices), as to their correctness and completeness and immediately raise any objections relating thereto.
**(5) Notice to the Bank in case of non-receipt of statements**
The customer must notify the Bank immediately if periodic balance statements and statements of securities holdings are not received. The duty to notify the Bank also exists if other advices expected by the customer are not received (e.g. securities contract notes, account statements after execution of customer orders or regarding payments expected by the customer).

## Cost of Bank Services

**12. INTEREST, CHARGES AND EXPENSES**
**(1) Interest and charges for private banking**
Interest and charges for loans and services customary in private banking are set out in the "Price Display – Standard rates for private banking" (Preisaushang) and, in addition, in the "List of Prices and Services" (Preis- und Leistungsverzeichnis). If a customer makes use of a loan or service listed therein, and unless otherwise agreed between the Bank and the customer, the interest and charges stated in the then valid Price Display or List of Prices and Services are applicable. Unless otherwise agreed, the charges for any services not stated therein which are provided following the instructions of the customer or which are believed to be in the interests of the customer and which can, in the given circumstances, only be expected to be provided against remuneration, shall be governed by the relevant statutory provisions.
**(2) Interest and charges other than for private banking**
The amount of interest and charges other than for private banking shall, in the absence of any other agreement or conflict with statutory provisions, be determined by the Bank at its reasonable discretion (Section 315 of the German Civil Code).

---

[2]International Bank Account Number.  [3]Bank Identifier Code.

Sal. Oppenheim jr. & Cie. AG & Co. KGaA   Unter Sachsenhausen 4   50667 Köln
Vorsitzender des Aufsichtsrats: Pierre de Weck   Persönlich haftende Gesellschafterin: Sal. Oppenheim jr. & Cie. Komplementär AG
Vorstand: Wilhelm von Haller (Vorsitzender), Dr. Gregor Broschinski, Jürgen Dobritzsch, Dr. Wolfgang Leoni
Telefon +49 221 145-01   Telefax +49 221 145-1512   E-Mail koeln@oppenheim.de   www.oppenheim.de
Postfach 10 27 43   50667 Köln   Amtsgericht Köln HRB 20121   USt-IdNr. DE 122786919

**(3) Non-chargeable service**

The Bank shall not charge for any service which it is required to provide by law or pursuant to a contractual accessory obligation or which it performs in its own interest, unless such charge is legally permissible and levied in accordance with the relevant statutory provisions.

**(4) Changes in interest rates; right of termination by the customer in the event of an increase**

In the case of variable interest rate loans, the interest rate shall be adjusted in accordance with the terms of the respective loan agreement. The Bank shall notify the customer of any interest rate adjustments. If the interest rate is increased, the customer may, unless otherwise agreed, terminate the loan agreement affected thereby with immediate effect within six weeks from notification of the change. If the customer terminates the loan agreement, any such increased interest rate shall not be applied to the terminated loan agreement. The Bank shall allow a reasonable period of time for settlement.

**(5) Changes in charges for services typically used on a permanent basis**

Changes in charges for services which are typically used by customers within the framework of the business relationship on a permanent basis (e.g. account/securities account management) shall be offered to the customer in text form no later than two months before their proposed date of entry into force. If the customer has agreed an electronic communication channel (e.g. online banking) with the Bank within the framework of the business relationship, the changes may also be offered through this channel. The changes shall be deemed to have been approved by the customer, unless the customer has indicated disapproval before their proposed date of entry into force. The Bank shall expressly draw the customer's attention to this consequent approval in its offer. If the customer is offered changes, the customer may also terminate the agreement affected by the changes free of charge with immediate effect before the proposed date of entry into force of the changes. The Bank shall expressly draw the customer's attention to this right of termination in its offer. If the customer terminates the agreement, the adjusted charge shall not be applied to the terminated agreement.

**(6) Reimbursement of expenses**

Any entitlement by the Bank to reimbursement of expenses shall be governed by the applicable statutory provisions.

**(7) Special arrangements for consumer loan agreements and payment services contracts with consumers for payments within the European Economic Area (EEA) in an EEA currency**

The interest and costs (charges, out-of-pocket expenses) for consumer loan agreements and payment services contracts with consumers for payments within the European Economic Area (EEA)[4] in an EEA currency[5] shall be determined by the relevant contractual arrangements and Special Conditions as well as the additional statutory provisions.

## Security for the Bank's Claims Against the Customer

**13. PROVIDING OR INCREASING SECURITY**

**(1) Right of the Bank to request security**

The Bank may demand that the customer provide the usual forms of security for any claims that may arise from the banking relationship, even if such claims are conditional (e.g. indemnity for amounts paid under a guarantee issued on behalf of the customer). If the customer has assumed a liability for another customer's obligations towards the Bank (e.g. as a surety), the Bank is, however, not entitled to demand that security be provided or increased for the debt resulting from such liability incurred before the maturity of the debt.

---

[4]Current EEA member countries: Austria, Belgium, Bulgaria, Cyprus, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Ireland, Italy, Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Netherlands, Norway, Poland, Portugal, Romania, Slovak Republic, Slovenia, Spain, Sweden, United Kingdom. [5]EEA currencies at present: Bulgarian lew, Czech krona, Danish krone, Hungarian forint, Icelandic króna, Latvian lats, Lithuanian litas, Norwegian krone, Polish zloty, pound sterling, Romanian leu, Swedish krona, Swiss franc.

# SAL. OPPENHEIM
Private Bank since 1789

**(2) Changes in the risk**
If the Bank, upon the creation of claims against the customer, has initially dispensed wholly or partly with demanding that security be provided or increased, it may nonetheless make such a demand at a later time, provided, however, that circumstances occur or become known which justify a higher risk assessment of the claims against the customer. This may, in particular, be the case if
– the economic status of the customer has changed or threatens to change in a negative manner or
– the value of the existing security has deteriorated or threatens to deteriorate.
The Bank has no right to demand security if it has been expressly agreed that the customer either does not have to provide any security or must only provide that security which has been specified. For consumer loan agreements, the Bank is entitled to demand that security be provided or increased only to the extent that such security is mentioned in the loan agreement; when, however, the net loan amount exceeds 75,000 euros, the Bank may demand that security be provided or increased even if the loan agreement does not contain any or any exhaustive indications as to security.

**(3) Setting a period of time for providing or increasing security**
The Bank shall allow a reasonable period of time for providing or increasing security. If the Bank intends to make use of its right of termination without notice according to No. 19 (3) of these Business Conditions should the customer fail to comply with the obligation to provide or increase security within such period, it shall draw the customer's attention to this consequence before doing so.

## 14. LIEN IN FAVOUR OF THE BANK

**(1) Agreement on the lien**
The customer and the Bank agree that the Bank acquires a lien on the securities and chattels which, within the scope of banking business, have come or may come into the possession of a domestic office of the Bank. The Bank also acquires a lien on any claims which the customer has or may in future have against the Bank arising from the banking relationship (e.g. credit balances).

**(2) Secured claims**
The lien serves to secure all existing, future and contingent claims arising from the banking relationship which the Bank with all its domestic and foreign offices is entitled to against the customer. If the customer has assumed liability for another customer's obligations towards the Bank (e.g. as a surety), the lien shall not secure the debt resulting from the liability incurred before the maturity of the debt.

**(3) Exemptions from the lien**
If funds or other assets come into the power of disposal of the Bank under the reserve that they may only be used for a specified purpose (e.g. deposit of cash for payment of a bill of exchange), the Bank's lien does not extend to these assets. The same applies to shares issued by the Bank itself (own shares) and to securities which the Bank keeps in custody abroad for the customer's account. Moreover, the lien extends neither to the profit-participation rights/profit-participation certificates (Genussrechte/Genussscheine) issued by the Bank itself nor to the Bank's securitised and non-securitised subordinated liabilities.

**(4) Interest and dividend coupons**
If securities are subject to the Bank's lien, the customer is not entitled to demand the delivery of the interest and dividend coupons pertaining to such securities.

## 15. SECURITY INTERESTS IN THE CASE OF ITEMS FOR COLLECTION AND DISCOUNTED BILLS OF EXCHANGE

**(1) Transfer of ownership by way of security**
The Bank acquires ownership by way of security of any cheques and bills of exchange deposited for collection at the time such items are deposited. The Bank acquires absolute ownership of discounted bills of exchange at the time of the purchase of such items; if it re-debits discounted bills of exchange to the account, it retains the ownership by way of security in such bills of exchange.

Sal. Oppenheim jr. & Cie. AG & Co. KGaA   Unter Sachsenhausen 4   50667 Köln
Vorsitzender des Aufsichtsrats: Pierre de Weck   Persönlich haftende Gesellschafterin: Sal. Oppenheim jr. & Cie. Komplementär AG
Vorstand: Wilhelm von Haller (Vorsitzender), Dr. Gregor Broschinski, Jürgen Dobritzsch, Dr. Wolfgang Leoni
Telefon +49 221 145-01   Telefax +49 221 145-1512   E-Mail koeln@oppenheim.de   www.oppenheim.de
Postfach 10 27 43   50467 Köln   Amtsgericht Köln HRB 20121   USt-IdNr. DE 122786919

**(2) Assignment by way of security**

The claims underlying the cheques and bills of exchange shall pass to the Bank simultaneously with the acquisition of ownership in the cheques and bills of exchange; the claims also pass to the Bank if other items are deposited for collection (e.g. direct debits, documents of commercial trading).

**(3) Special-purpose items for collection**

If items for collection are deposited with the Bank under the reserve that their countervalue may only be used for a specified purpose, the transfer or assignment of ownership by way of security does not extend to these items.

**(4) Secured claims of the Bank**

The ownership transferred or assigned by way of security serves to secure any claims which the Bank may be entitled to against the customer arising from the customer's current account when items are deposited for collection or arising as a consequence of the re-debiting of unpaid items for collection or discounted bills of exchange. Upon request of the customer, the Bank re-transfers to the customer the ownership by way of security of such items and of the claims that have passed to it if it does not, at the time of such request, have any claims against the customer that need to be secured or if it does not permit the customer to dispose of the countervalue of such items prior to their final payment.

**16. LIMITATION OF THE CLAIM TO SECURITY AND OBLIGATION TO RELEASE**

**(1) Cover limit**

The Bank may demand that security be provided or increased until the realisable value of all security corresponds to the total amount of all claims arising from the banking business relationship (cover limit).

**(2) Release**

If the realisable value of all security exceeds the cover limit on a more than temporary basis, the Bank shall, at the customer's request, release security items as it may choose in the amount exceeding the cover limit; when selecting the security items to be released, the Bank shall take into account the legitimate concerns of the customer or of any third party having provided security for the customer's obligations. To this extent, the Bank is also obliged to execute orders of the customer relating to the items subject to the lien (e.g. sale of securities, repayment of savings deposits).

**(3) Special agreements**

If assessment criteria for a specific security item other than the realisable value or another cover limit or another limit for the release of security have been agreed, these other criteria or limits shall apply.

**17. REALISATION OF SECURITY**

**(1) Option of the Bank**

If the Bank realises security, it may choose between several security items. When realising security and selecting the items to be realised, the Bank shall take into account the legitimate concerns of the customer and any third party who may have provided security for the obligations of the customer.

**(2) Credit entry for proceeds under turnover tax law**

If the transaction of realisation is subject to turnover tax, the Bank shall provide the customer with a credit entry for the proceeds, such entry being deemed to serve as invoice for the supply of the item given as security and meeting the requirements of turnover tax law (Umsatzsteuerrecht).

# Termination

**18. TERMINATION RIGHTS OF THE CUSTOMER**

**(1) Right of termination at any time**

Unless the Bank and the customer have agreed a term or a diverging termination provision, the customer may at any time, without notice, terminate the business relationship as a whole or particular business relations (e.g. a chequing agreement).

# SAL. OPPENHEIM
Private Bank since 1789

**(2) Termination for reasonable cause**
If the Bank and the customer have agreed a term or a diverging termination provision for a particular business relation, such relation may only be terminated without notice if there is reasonable cause therefor which makes it unacceptable to the customer to continue it, also after giving consideration to the legitimate concerns of the Bank.

**(3) Statutory termination rights**
Statutory termination rights shall not be affected.

## 19. TERMINATION RIGHTS OF THE BANK

**(1) Termination upon notice**
Upon observing a reasonable period of notice, the Bank may at any time terminate the business relationship as a whole or particular business relations for which neither a term nor a diverging termination provision has been agreed (e.g. the chequing agreement authorizing the use of cheque forms). In determining the period of notice, the Bank shall take into account the legitimate concerns of the customer. The minimum termination notice for a payment services framework contract (e.g. current account or card contract) and a securities account shall be two months.

**(2) Termination of loans with no fixed term**
Loans and loan commitments for which neither a fixed term nor a diverging termination provision has been agreed may be terminated at any time by the Bank without notice. When exercising this right of termination, the Bank shall give due consideration to the legitimate concerns of the customer.
Where the German Civil Code contains specific provisions for the termination of a consumer loan agreement, the Bank may only terminate the agreement as provided therein.

**(3) Termination for reasonable cause without notice**
Termination of the business relationship as a whole or of particular business relations without notice is permitted if there is reasonable cause which makes it unacceptable to the Bank to continue the business relations, also after having given consideration to the legitimate concerns of the customer. Reasonable cause is given in particular

– if the customer has made incorrect statements as to the customer's financial status, provided such statements were of significant importance for the Bank's decision concerning the granting of credit or other operations involving risks for the Bank (e.g. the delivery of a payment card), or

– if a substantial deterioration in the customer's financial status or in the value of security occurs or threatens to occur, jeopardizing the repayment of a loan or the discharge of any other obligation towards the Bank even if security provided therefor is realised, or

– if the customer fails to comply, within the required period of time allowed by the Bank, with the obligation to provide or increase security according to No. 13 (2) of these Business Conditions or to the provisions of some other agreement.

If reasonable cause is given due to the breach of a contractual obligation, termination shall only be permitted after expiry, without result, of a reasonable period of time fixed for corrective action by the customer or after a warning to the customer has proved unsuccessful, unless this proviso can be dispensed with owing to the special features of a particular case (Section 323 (2) and (3) of the German Civil Code).

**(4) Termination of consumer loan agreements in the event of default**
Where the German Civil Code contains specific provisions for the termination of a consumer loan agreement subsequent to repayment default, the Bank may only terminate the agreement as provided therein.

**(5) Settlement following termination**
In the event of termination without notice, the Bank shall allow the customer a reasonable period of time for settlement (in particular for the repayment of a loan), unless it is necessary to attend immediately thereto (e.g. the return of cheque forms following termination of a chequing agreement).

Sal. Oppenheim jr. & Cie. AG & Co. KGaA   Unter Sachsenhausen 4   50667 Köln
Vorsitzender des Aufsichtsrats: Pierre de Weck   Persönlich haftende Gesellschafterin: Sal. Oppenheim jr. & Cie. Komplementär AG
Vorstand: Wilhelm von Haller (Vorsitzender), Dr. Gregor Broschinski, Jürgen Dobritzsch, Dr. Wolfgang Leoni
Telefon +49 221 145-01   Telefax +49 221 145-1512   E-Mail koeln@oppenheim.de   www.oppenheim.de
Postfach 10 27 43   50467 Köln   Amtsgericht Köln HRB 20121   USt-IdNr. DE 122786919

## Protection of Deposits

**20. DEPOSIT PROTECTION FUND**
**(1) Scope of protection**
The Bank is a member of the Deposit Protection Fund of the Association of German Banks (Einlagensicherungsfonds des Bundesverbandes deutscher Banken e.V.), hereinafter referred to as "Deposit Protection Fund". The Deposit Protection Fund protects all liabilities which are required to be shown in the balance sheet item "Liabilities to customers". Among these are demand, term and savings deposits, including registered savings certificates. The protection ceiling for each creditor is, until 31 December 2014, 30%, until 31 December 2019, 20%, until 31 December 2024, 15% and, as of 1 January 2025, 8.75% of the liable capital of the Bank relevant for deposit protection. Deposits established or renewed after 31 December 2011 shall be subject to the respective new protection ceilings as of the aforementioned dates, irrespective of the time when the deposits are established. Deposits established before 31 December 2011 shall be subject to the old protection ceilings until maturity or until the next possible withdrawal date.
The applicable protection ceiling shall be notified to the customer by the Bank on request. It is also available on the Internet at www.bankenverband.de. Where the Bank is a branch of a bank from another European Economic Area (EEA) country, the Deposit Protection Fund shall only provide compensation if and to the extent that the deposits exceed the protection ceiling of the home-country deposit guarantee scheme. The level of coverage provided by the home-country deposit guarantee scheme can be viewed on the Internet at the website of the relevant scheme, the address of which shall be made available to the customer by the Bank on request.
**(2) Exemptions from deposit protection**
Not protected are claims in respect of which the Bank has issued bearer instruments, e.g. bearer bonds and bearer certificates of deposit, as well as liabilities to banks.
**(3) Additional validity of the By-laws of the Deposit Protection Fund**
Further details of the scope of protection are contained in Section 6 of the By-laws of the Deposit Protection Fund, which are available on request.
**(4) Transfer of claims**
To the extent that the Deposit Protection Fund or its mandatory makes payments to a customer, the respective amount of the customer's claims against the Bank together with all subsidiary rights shall be transferred simultaneously to the Deposit Protection Fund.
**(5) Disclosure of information**
The Bank shall be entitled to disclose to the Deposit Protection Fund or to its mandatory all relevant information and to place necessary documents at their disposal.

## Ombudsman Scheme

**21. Out-of-court dispute resolution**
Consumers may have any disputes with the Bank resolved by the German private banks' Ombudsman. Where disputes resulting from the scope of application of the law on payment services (Sections 675 c – 676 c of the German Civil Code) are involved, customers who are not consumers also may request their resolution by the German private banks' Ombudsman. Further details are contained in the "Rules of Procedure for the Settlement of Customer Complaints in the German Private Commercial Banking Sector", which are available on request or can be downloaded from the Internet at www.bankenverband.de. Complaints should be addressed in writing to the Customer Complaints Office at the Bundesverband deutscher Banken (Association of German Banks), Postfach 04 03 07, 10062 Berlin.