**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                :

In re Application of KREKE IMMOBILIEN    :    Civil Action
KG, Petitioner,                          :    No.: 13-MISC-110 (NRB)
                                :

To Issue a Subpoena to Deutsche Bank AG,    :
for Production of Documents and Testimony    :
for Use in a Foreign Proceeding           :
                                :
                                :
---------------------------------------------------------------- x


**MEMORANDUM OF LAW IN OPPOSITION TO KREKE IMMOBILIEN KG'S
APPLICATION FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING
PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

**Section**                                                                                              **Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

    Petitioner's § 1782 Application ............................................................................................. 2

    Petitioner's Contemplated Lawsuit in Germany .................................................................. 3

    Petitioner's Proposed Discovery ........................................................................................... 4

STANDARD OF LAW.................................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

I.       § 1782 DOES NOT PERMIT DISCOVERY OF DOCUMENTS LOCATED OUTSIDE
        OF THE UNITED STATES ............................................................................................... 5

    1.      § 1782 does not authorize the production of documents located abroad .............. 5

    2.      Petitioner's citation to a non-§ 1782 case authorizing the production of
          documents located outside of the United States is inapposite ............................... 8

    3.      The legislative history and commentary by Professor Smit supports the
          prevailing view of this Circuit .............................................................................. 8

II.     THE BALANCE OF THE *INTEL* DISCRETIONARY FACTORS WEIGHS AGAINST
        PETITIONER'S § 1782 APPLICATION ............................................................................ 10

    1.      Whether the person from whom discovery is sought is a participant in
          the foreign proceeding ......................................................................................... 10

    2.      The nature of the foreign tribunal, the character of the proceedings
          underway abroad, and the receptivity of the foreign government or the
          court or agency abroad to U.S. federal-court judicial assistance ........................ 14

    3.      Whether the § 1782 request conceals an attempt to circumvent the
          foreign proof-gathering restrictions or other policies of a foreign
          country ................................................................................................................. 16

    4.      Whether unduly intrusive or burdensome requests should be rejected
          or trimmed............................................................................................................ 18

    5.      The discovery sought by Petitioner will in no way vindicate the
          statutory intent of § 1782 ..................................................................................... 20

III.    PETITIONER'S § 1782 APPLICATION SHOULD BE DENIED BECAUSE IT DOES
        NOT COMPORT WITH THE FEDERAL RULES OF CIVIL PROCEDURE.................... 21

CONCLUSION............................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Aventis Pharma v. Wyeth,*
  No. M-19-70, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009)....................................................17

*Heraus Kulzer v. Biomet,*
  633 F.3d 591 (7th Cir. 2011) .........................................................................................15, 17

*In re Application of Edelman.,*
  295 F.3d 171 (2d Cir. 2002)............................................................................................ 7-8

*In re Application of Eli Lilly & Co.,*
  No. 3:09MC296(AWT), 2010 WL 2509133 (D. Conn. June 15, 2010)....................................5

*In re Application of Esses,*
  101 F.3d 873 (2d Cir. 1996)...............................................................................................4

*In re Application of Euromepa,*
  51 F.3d 1095 (2d Cir. 1995)..............................................................................................15

*In re Application of Gemainschaftspraxis,*
  No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)..............................6, 7

*In re Application of Godfrey,*
  526 F. Supp. 2d 417 (S.D.N.Y. 2007)............................................................................ passim

*In re Application of Microsoft Corp.,*
  428 F. Supp. 2d 188 (S.D.N.Y. 2006)............................................................................ passim

*In re Application of Minatec Finance,*
  Civ. No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ..............18

*In re Application of OOO Promnefstroy,*
  Misc. No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ............12, 16, 18, 19

*In re Application of Sarrio,*
  119 F.3d 143 (2d Cir. 1997)................................................................................................7

*In re Application of Sarrio,*
  No. 9-372, 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995)....................................................7, 8, 9

*In re Ishihara Chemical Co.,*
  251 F.3d 120 (2d Cir. 2001)...............................................................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................................ passim

*Kestrel Coal Pty. v. Joy Global Inc.*,
    362 F.3d 401 (7th Cir. 2004) ............................................................. 13

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
    384 F. Supp. 2d 45 (D.D.C. 2005) ..................................................... 7

*Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ........................................................... 4, 12

*Ssangyong Corp. v. Vida Shoes Int'l Inc.*,
    No. 03 CIV. 5014 KMW DFE, 2004 WL 1125659 (S.D.N.Y. May 20, 2004) ....................... 8

## STATUTES

28 U.S.C. § 1782 ............................................................................ passim

28 U.S.C § 1782(a) ........................................................................ passim

Fed. R. Civ. P. 26(b)(2)(C) ............................................................ 5, 22

Fed. R. Civ. P. 30(b)(6) ...................................................................... 2

Fed. R. Civ. P. 34 ............................................................................. 13

Fed. R. Civ. P. 45 .......................................................................... 2, 23

Fed. R. Civ. P. 45(c)(1) ..................................................................... 21

Fed. R. Civ. P. 45(3) ......................................................................... 23

## LEGISLATIVE HISTORY

S. Rep. No. 1580, 88th Congress, 2nd Sess. (1964) ....................................... 9

## OTHER AUTHORITIES

1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters in
    1979, Article 23 .......................................................................... 16

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section
    1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. (1998) .................... 9

Respondent Deutsche Bank AG ("Deutsche Bank") respectfully submits this memorandum of law, together with the accompanying Declarations of Volker Butzke, Dr. Joerg Mucke and Pamela Rogers Chepiga, in opposition to the application of Kreke Immobilien KG ("Petitioner") for discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782.

## PRELIMINARY STATEMENT

Petitioner, a German limited partnership, asserts that it is about to commence a lawsuit against a group of defendants, all German companies or individuals, in Cologne, Germany.  Rather than proceeding with the action in Germany and pursuing the established discovery mechanisms under German civil procedure, Petitioner has filed a § 1782 application that asks this court to supplant such mechanisms and replace them with U.S. discovery mechanisms in their entirety.  Such a drastic and complete substitution of a foreign court's discovery procedures is not a proper use of § 1782.

Petitioner's application is even more improper in that it asks this Court to allow a German plaintiff to order Deutsche Bank, a German bank with a U.S. presence, to produce documents that are located outside of the United States.  Moreover, the majority of documents sought by Petitioner are in the custody of Oppenheim, the defendant in the anticipated German proceeding who therefore will be subject to the jurisdiction of the German court.  Rather than seeking production of these documents through the German discovery procedures, Petitioner asks this Court to require Deutsche Bank to retrieve the documents from Germany, review such documents for various privilege issues, and produce responsive, non-privileged documents in this district so the Petitioner can then take them back to Germany to attempt to use in the soon-to-be-filed German proceeding.  This is a blatantly improper use of § 1782 that this Court should not countenance.

The discovery sought by Petitioner should be directed to the parties in the German proceeding that will be subject to the jurisdiction of the German court, a court that plainly is in a better position to determine how the production of such documents should proceed.  This is particularly true, where, as here, Petitioner is a sophisticated party who entered into a contractual relationship with the proposed defendant in the German proceeding that is governed by German law and that requires Petitioner to bring suit against the defendant in German court, according to German civil procedure and its attendant limitations on discovery.

Finally, Petitioner's proposed subpoena, seeking discovery of nearly twenty years of documents regarding forty-two separate real estate investment funds, does not comply with the discovery standards set forth in the Federal Rules of Civil Procedure and incorporated in § 1782.  Accordingly, Petitioner's § 1782 application should be denied in its entirety.

## BACKGROUND

Petitioner's § 1782 Application

On March 27, 2013, Petitioner filed an application with this Court seeking an order pursuant to 28 U.S.C. § 1782 authorizing Petitioner to serve discovery on Deutsche Bank. (*Chepiga Declaration,* Ex. A.)  The application included a subpoena to appear at a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) and a subpoena for the production of documents pursuant to Federal Rule of Civil Procedure 45.  (*Chepiga Decl.,* Ex. B, Ex. C.)  The subpoenas are incredibly broad in scope, seeking the production of sixteen different categories of documents.  Except for one category of documents that is limited to documents from the past thirteen years, Petitioner's proposed document requests do not contain any stated time limitation. (*Chepiga Decl.*, Ex. C.)  Significantly, the subpoenas seek documents and information mainly in the possession of proposed parties to a foreign action contemplated, but not yet filed, by Petitioner.  (*Chepiga Decl.*, Ex. C; *Mucke Declaration*, ¶ 4; *Butzke Declaration*, ¶ 4.)

<u>Petitioner's Contemplated Lawsuit in Germany</u>

Petitioner alleges that the proposed subpoenas seek discovery from Deutsche Bank that will be relevant to and for use in a civil case in Germany (the "Contemplated German Proceeding") that Petitioner has yet to file.  Petitioner alleges that it will file the Contemplated German Proceeding no later than the end of May 2013 in the District Court of Cologne.  (*Pet. Br.* at 9.)  The Contemplated German Proceeding supposedly arises out of a dispute between Petitioner, a German limited partnership, and various other German parties, including Sal. Oppenheim jr. & Cie. AG & Co. KGaA ("Oppenheim"), Josef Esch, a German citizen, their controlled companies and personally liable partners.  (*Id.* at 7.)  Petitioner commenced a formal mediation against these parties in Hamburg, Germany on December 26, 2011 to resolve the dispute.  (*Id.*)  Petitioner alleges that the mediation terminated without resolution on January 10, 2013.  (*Id.*)  Petitioner alleges that it is "now in the process of commencing suit against Oppenheim" for fraud, breach of duty, and breach of contract based on certain investments that Petitioner purportedly made in three real estate investment funds controlled by Oppenheim.  (*Id.*)  Petitioner's investment and entire business relationship with Oppenheim is governed by Oppenheim's "General Business Conditions."  (*Chepiga Decl.*, Ex. D.)

In March 2010, Deutsche Bank acquired Oppenheim's parent company, which thereafter transferred its shares in Oppenheim to DB Capital Markets (Deutschland) GmbH ("DB Capital Markets").  (*Chepiga Decl.*, ¶ 2.)  Oppenheim is now a wholly-owned subsidiary of DB Capital Markets, which is a wholly-owned subsidiary of Deutsche Bank.  (*Id.*)  It is not clear at this time whether Petitioner will commence a lawsuit against Oppenheim only, or against other defendants, including Deutsche Bank or DB Capital Markets.

<u>Petitioner's Proposed Discovery</u>

In its § 1782 application, Petitioner filed proposed subpoenas that seek the production of documents by Deutsche Bank that fall broadly into two categories: (1) documents related to Oppenheim and Mr. Esch's promotion, sale, management and operation of forty-two real estate investment funds, which Petitioner has termed the "Oppenheim-Esch funds", and (2) documents related to Deutsche Bank's due diligence and acquisition of Oppenheim's parent company in 2010.  (*Chepiga Decl.*, Ex. C.)  Notably, Petitioner's requests call for the production of documents, many of which appear to be subject to various privileges under German law, including the attorney-client, data protection, privacy and bank secrecy privileges.

## STANDARD OF LAW

A court may grant a § 1782 application only if (i) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (ii) the discovery is for use in a proceeding before a foreign tribunal, and (iii) the application is made by a foreign or international tribunal or "any interested person."  *See Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004).

However, a court is not required to grant a Section 1782 application simply because it has the authority to do so.  *See In re Application of Godfrey¸* 526 F. Supp. 2d 417, 418-19 (S.D.N.Y. 2007).  Instead, even when the statutory requirements are met, district courts have "wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems."  *In re Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996).

The Supreme Court has identified four discretionary factors for a district court to consider in determining whether to grant a Section 1782 application: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the

foreign tribunal, the character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether "unduly intrusive or burdensome requests" should be "rejected or trimmed." *Intel*, 542 U.S. at 264-65.

In addition to the statutory requirements and the *Intel* discretionary factors, "[t]he proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b)." *In re Application of Eli Lilly & Co.*, No. 3:09MC296(AWT), 2010 WL 2509133, at *3 (D. Conn. June 15, 2010) (citation omitted). Rule 26(b) requires the Court to limit discovery, if, *inter alia*, the evidence "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

## ARGUMENT

## I.    § 1782 DOES NOT PERMIT DISCOVERY OF DOCUMENTS LOCATED OUTSIDE OF THE UNITED STATES

The party seeking relief pursuant to § 1782 has the burden of proving that this Court is authorized to grant its discovery request. *Godfrey¸* 526 F. Supp. 2d at 419. To meet this burden, Petitioner must show, as a preliminary matter, that all of the threshold prerequisites of § 1782(a) are satisfied. *In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006). However, even where these prerequisites are satisfied, federal courts limit discovery pursuant to § 1782 to documents that are located in the United States. *See, e.g., Godfrey*, 526 F. Supp. 2d at 423-24.

### 1.    § 1782 does not authorize the production of documents located abroad

The prevailing view in this Circuit is that § 1782 does not permit the discovery of documents located outside of the United States, even where the statutory requirements are met.

*See, e.g., Godfrey*, 526 F. Supp. 2d at 423-24.  Instead, this Court has consistently held that discovery pursuant to § 1782 is limited to documents located within the United States.  *Id.; see also Microsoft*, 428 F. Supp. 2d at 194.  Petitioner's § 1782 application seeks documents and information relating to the Oppenheim-Esch funds and Deutsche Bank's acquisition of Oppenheim's parent company in 2010.  (*Chepiga Decl.*, Ex. C.)  The documents sought by Petitioner, whether in the custody of Deutsche Bank, DB Capital Markets or Oppenheim, are located outside of the United States and therefore are not the proper subject of § 1782 discovery.[1] (*See Mucke Decl.*, ¶ 4; *Butzke Decl.*,¶ 4.)

In *Godfrey*, the petitioner was granted an ex parte order to issue subpoenas for the production of documents located in Russia.  526 F. Supp. 2d at 423.  Judge Rakoff, citing previous decisions by the S.D.N.Y. and the Second Circuit, the legislative history of the statute and commentary by Professor Hans Smit, the primary drafter of the final version of the statute, found that the "bulk of authority in this Circuit, with which this Court agrees, holds that, for purposes of § 1782(a), a witness cannot be compelled to produce documents located outside of the United States."  *Id.*  Judge Rakoff noted that Judge Jones did hold in *In re Application of Gemainschaftspraxis,* No. M19-88(BSJ), 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006), that § 1782 could reach documents located abroad.  However, Judge Rakoff explained that Judge Jones' decision rested on an incorrect interpretation of the Supreme Court's decision in *Intel*. 526 F. Supp. 2d at 424 ("[T]here is no reason to conclude that *Intel* stands for the proposition that § 1782 may be used to compel discovery of documents located abroad for use in foreign

---

[1]  Additionally, because all of the documents sought by Petitioner are held in Europe by Deutsche Bank's European subsidiaries, there is no corporate representative in the United States who would be familiar with the deposition topics set forth in Petitioner's proposed 30(b)(6) subpoena.  Each deposition topic simply lists the same documents sought by Petitioner in its subpoena for the production of documents.  (*See Chepiga Decl.*, Ex. B.)  Just as § 1782 does not require the importation of documents located abroad into the United States, it does not require the importation of a custodian into the United States to testify at a deposition concerning such documents.

judicial proceedings.").  As a result, Judge Rakoff granted the respondents' motion to quash the

subpoenas, finding that § 1782 discovery would be "inappropriate here because the documents

petitioners seek are located in Russia."  *Id.* at 423.

> In *In re Application of Sarrio*, the respondent moved to quash subpoenas issued

under the authority of an ex parte order obtained pursuant to § 1782.  No. 9-372, 1995 WL

598988, at *1 (S.D.N.Y. Oct. 11, 1995) ("*Sarrio I*").  After reviewing the legislative history and

a declaration filed by Professor Smit, Judge Patterson found that "it seems clear that, despite its

unrestrictive language, Section 1782 was not intended to provide discovery of evidence

maintained within a foreign jurisdiction."  *Id.* at 2.  Accordingly, Judge Patterson refused to

order the production of documents located in Spain and noted that the petitioner "is free to obtain

production of documents located in Spain by court procedures in Spain."  *Id.* at *3.  On appeal,

the Second Circuit agreed, stating that "despite the statute's unrestrictive language, there is

reason to think that Congress intended to reach only evidence located within the United States."

*In re Application of Sarrio*, 119 F.3d 143, 147 (2d Cir. 1997).

> Judge McMahon reached the same conclusion in *Microsoft* where the petitioner

sought the production of documents located outside of the United States: "Therefore, to the

extent [petitioner] seeks documents located outside of the United States which, according to

[respondents], includes all relevant documents they may have they are not discoverable under

§ 1782."  428 F. Supp. 2d at 194, n.5 (citing *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,

384 F. Supp. 2d 45, 53 (D.D.C. 2005) for the proposition that § 1782 does not authorize

discovery of documents held abroad).  Finally, the Second Circuit recognized the limitation of

§ 1782 discovery to documents located in the United States in *In re Application of Edelman*, 295

F.3d 171, 176-77, 180 (2d Cir. 2002) (discussing the "implicit limits on the location of documentary evidence" under § 1782).

> ### 2.   Petitioner's citation to a non-§ 1782 case authorizing the production of documents located outside of the United States is inapposite

Petitioner altogether fails to acknowledge this clear line of case law establishing that § 1782 does not empower this Court with extraterritorial reach.  Instead, Petitioner asserts, citing to a case that did not involve a § 1782 application, that "even if the documents are located outside the United States and held by a foreign affiliate or subsidiary of a subpoena recipient, courts generally order production."  (*Pet. Br.* at p. 10.) (citing *Ssangyong Corp. v. Vida Shoes Int'l Inc.*, No. 03 CIV. 5014 KMW DFE, 2004 WL 1125659, at *2 (S.D.N.Y. May 20, 2004)).  Aside from the sheer overbreadth of Petitioner's assertion, *Ssangyong* involved a third-party subpoena in connection with domestic litigation in the United States and therefore did not implicate the same concerns as an application for discovery for use in a foreign proceeding.  Indeed, it is quite different for a U.S. court to order discovery of documents located in Germany for use in a U.S. proceeding than for a U.S. court to order documents located in Germany to be sent to the United States and then sent back to Germany for use in a German proceeding that has no connection whatsoever to the United States.  The latter simply is not a proper use of § 1782.

> ### 3.   The legislative history and commentary by Professor Smit supports the prevailing view of this Circuit

This conclusion is even more logical, where, as here, the documents are located in and accessible to the court in the very jurisdiction where Petitioner is set to commence the foreign proceeding.  (*See Mucke Decl.*, ¶ 4; *Butzke Decl.*, ¶ 4.)  As numerous courts have recognized, the discovery of such documents is not consistent with the purpose of § 1782 as gleaned from its legislative history and other authoritative sources on the statute.  In *Sarrio I*, Judge Patterson reviewed the legislative history of the statute and found that the 1964

amendments to § 1782 demonstrated that the statute was not intended to reach documents located

abroad: "the primary intent of the 1964 amendments to Section 1782 was 'to clarify and

liberalize existing U.S. procedures for assisting foreign and international tribunals and litigants in

obtaining oral and documentary *evidence in the United States*.'" 1995 WL 598988, at *2

(quoting S. Rep. No. 1580, 88th Congress, 2nd Sess. (1964) (emphasis added)); *see also*

*Godfrey*, 526 F. Supp. 2d at 423 (same).

Judge Patterson also considered a declaration submitted by Professor Smit, the

primary drafter of the amended version of the statute, who argued that:

> if Section 1782 could be used to obtain discovery evidence located in a foreign
> country it would become an instrument for interfering with the regular court
> procedures of the foreign country and additionally, that there would be a heavy
> influx of discovery applications under Section 1782, especially in this jurisdiction
> where so many financial and multi-national institutions are centered.

*Sarrio I*, 1995 WL 598988, at *2. In *Godfrey*, Judge Rakoff also noted commentary by Professor

Smit asserting that the extension of § 1782 to documents located abroad would contradict the

statute's intended application: "Thus, a harmonious scheme is established: Evidence in Spain is

obtained through proceedings in Spain, evidence in Great Britain is obtained through

proceedings in Great Britain, and evidence in the United States is obtained through proceedings

in the United States." 526 F. Supp. 2d at 423 (quoting Hans Smit, *American Assistance to*

*Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C.*

*Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 11 (1998)). To hold otherwise, Professor Smit

warned, "could turn American courts into 'clearing houses for requests for information from

courts and litigants all over the world in search of evidence to be obtained all over the world.'"

*Id.*

Yet this is precisely the result advocated by Petitioner. Petitioner argues that

because Deutsche Bank's general counsel has an office in New York (in addition to London and

Frankfurt am Main) and "the documents in question are undoubtedly kept electronically and available as readily in New York as in Germany", Deutsche Bank should be required to comply with full U.S. discovery for use in a future proceeding in Germany between exclusively German parties and involving German real estate investments.  (*Pet. Supp. Br.*, at 5.)  If this were the case, American courts would indeed become clearing houses as plaintiffs in every case filed around the world against Deutsche Bank, or any other multinational institution with a presence in the United States, would have access to full U.S. discovery before even filing suit in the foreign jurisdiction.  This would be an absurd result that is clearly not intended by the statute and that demonstrates why Petitioner's application should be denied in its entirety.

## II.   THE BALANCE OF THE *INTEL* DISCRETIONARY FACTORS WEIGHS AGAINST PETITIONER'S § 1782 APPLICATION

Even if § 1782 did not prohibit extraterritorial application of the statute to documents located outside of the United States, this Court should not exercise its discretion in favor of ordering such discovery here because the balance of the *Intel* discretionary factors weighs against such an order.  Where a court has the authority to grant a § 1782 application because the statutory prerequisites have been met, the court still must determine whether to exercise its discretion by weighing the factors set out by the Supreme Court in *Intel*.  *Intel*, 542 U.S. at 264 ("a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.").

### 1.   Whether the person from whom discovery is sought is a participant in the foreign proceeding

The first *Intel* factor considers whether the discovery is sought from a person who is a participant in the foreign proceeding.  This factor weighs heavily against Petitioner's application for three reasons.  First, Petitioner may well name Deutsche Bank as a defendant in its future German action such that Deutsche Bank could be a participant in the foreign

proceeding and subject to the jurisdiction of the German court.  Second, for all intents and

purposes, Petitioner seeks discovery from Oppenheim, whom Petitioner admits it will name as a

defendant in the foreign proceeding.  Third, because Petitioner seeks documents that are largely

in the custody of Oppenheim, it should seek discovery of those documents from Oppenheim

itself, not from Deutsche Bank, the parent company of DB Capital Markets, Oppenheim's parent

company.

        When a petitioner seeks discovery from a participant in the foreign proceeding,

"the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is

sought from a non-participant in the manner arising abroad."  *Intel,* 542 U.S. at 264.  In this case,

because Petitioner chose to file its § 1782 application prior to initiating its action in Germany,

there is no way to know what persons will be named as defendants in the Contemplated German

Proceeding.  At this point, Deutsche Bank certainly could be named as a defendant.  In that case,

the German court will have jurisdiction over Deutsche Bank and can order it to produce

documents in response to Petitioner's requests.  That Petitioner prematurely filed its application

prior to bringing its action in Germany such that it remains to be seen what persons will be

named as defendants in that action should not inure to Petitioner's benefit.  As Deutsche Bank

may find itself named as a defendant in the Contemplated German Proceeding, the first factor

weighs against § 1782 assistance.

        However, even assuming Petitioner does not name Deutsche Bank as a defendant

in the Contemplated German Proceeding, this factor still weighs heavily against Petitioner's

application.  The vast majority of documents sought by Petitioner in its proposed subpoena are

documents in the sole possession and custody of Oppenheim, whom Petitioner plainly admits

will be named as defendant in the Contemplated German Proceeding.  (*Mucke Decl., ¶ 4; Butzke*

*Decl.*, ¶ 4*; Pet. Br.* at 7.)  Accordingly, Petitioner's decision to seek the documents from

Deutsche Bank rather than Oppenheim and then claim that it will not name Deutsche Bank as a

defendant does not shift this factor into its favor.  *See In re Application of OOO Promnefstroy*,

Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) ("Because the

Court concludes that nearly all of the documents that the subpoena seeks are also in the

possession of parties to the foreign proceeding, the first factor weighs squarely in favor of

[respondent].")

        Petitioner asserts that its seeks discovery from Deutsche Bank because

"documents held by Oppenheim are properly considered within the possession, custody, or

control of its parent, Deutsche Bank."  (*Pet. Br.* at 10.)  However, the Second and Seventh

Circuits have both found that ordering discovery in similar circumstances would not be a proper

application of § 1782.  In *Schmitz v. Bernstein Liebhard & Lifshitz*, plaintiffs in a civil action in

Germany alleged that a German company had misled investors by overstating the value of its

real estate assets.  376 F.3d 79, 81 (2d Cir. 2004).  The plaintiffs then applied to the S.D.N.Y. for

permission to obtain the discovery of documents in the possession of the German defendant's

law firm in New York pursuant to § 1782.  *Id.*  The district court denied the discovery request.

The Second Circuit affirmed and found that the district court's decision was supported by the

first *Intel* factor:

> Although technically the respondent in the district court was [the law firm], for all
> intents and purposes petitioners are seeking discovery from [the German
> company], their opponent in the German litigation.  *Intel* suggests that because
> [the German company] is a participant in the German litigation subject to German
> court jurisdiction, petitioner's need for § 1782 help "is not apparent as it
> ordinarily is when evidence is sought from a nonparticipant in the matter arising
> abroad."

*Id.* at 85 (quoting *Intel*, 542 U.S. at 264.)  Petitioner's application here is indistinguishable from

the application in *Schmitz*.  Although technically the petition seeks discovery from Deutsche

Bank, for all intents and purposes, Petitioner is seeking discovery from Oppenheim.  Whether documents in Oppenheim's possession are accessible by Deutsche Bank based on its control of DB Capital Markets' subsidiary is irrelevant.  Most of the documents sought by Petitioner are in the sole custody of Oppenheim, whom Petitioner admits will be named as defendant in the Contemplated German Proceeding and therefore will be subject to the jurisdiction of a German court.  (*Mucke Decl. ¶ 4*, *Butzke Decl.*, *¶ 4; Pet. Br.* at 7.)

The Seventh Circuit reached the same conclusion in *Kestrel Coal Pty. v. Joy Global Inc.*, 362 F.3d 401 (7th Cir. 2004), a case that presented the precise issue before this Court.  In *Kestrel*, an Australian corporation filed suit against a U.K. corporation in Australian court.  362 F.3d at 402.  The plaintiff also named a U.S. company as defendant in the Australian action.  This U.S. company was a holding company that had indirectly acquired all of the U.K. defendant's stock.  *Id.*  The plaintiff then filed a § 1782 application in the Eastern District of Wisconsin seeking an order "demanding that [the U.S. parent company] cause its subsidiaries to retrieve documents in Australia and the United Kingdom, have them shipped to Wisconsin, and there provide them to [the Australian plaintiff], which will cart them to Australia."  *Id.* at 402-403.  The district court granted the petition and the U.S. parent company appealed.  The Seventh Circuit reversed, finding that "Section 1782(a) itself neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity."  *Id.* at 405.  Rather, the court found that a party seeking discovery under the Federal Rules of Civil Procedure should use "Fed. R. Civ. P. 34 to get documents from firms that possess them, not from their corporate affiliates."  *Id.*  Here, if Petitioner seeks the production of documents in the custody of Oppenheim, if should get them from Oppenheim, not from Deutsche Bank.

**2.     The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance**

The second *Intel* factor considers the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal court assistance.  This factors weighs against § 1782 discovery for two reasons.  First, as the foreign proceeding has not yet been filed, it would be premature to require the burdensome document production that Petitioner seeks.  Second, because the German court has not been engaged, Deutsche Bank cannot ask the foreign court to weigh in on its receptivity to the discovery sought by Petitioner.  Once again, the premature filing of this § 1782 application should not inure to the benefit of Petitioner.

The Supreme Court in *Intel* established that the foreign proceeding need only be within reasonable contemplation, abrogating the Second Circuit's rule that the foreign proceeding be imminent for the grant of § 1782 discovery.  542 U.S. at 259 (abrogating *In re Ishihara Chem. Co.*, 251 F.3d 120, 125 (2d Cir. 2001)).  However, the fact that no foreign proceeding has been filed nevertheless should inform this Court's discretion in deciding whether to grant Petitioner's application.  Petitioner's proposed subpoena calls for the production of sixteen categories of documents with no time limitation except for one request that spans a time period of thirteen years.  (*Chepiga Decl.*, Ex. C.)  Numerous courts have recognized the "twin aims" of § 1782, the first of which is to provide an *efficient* means of assistance to participants in international litigation.  *See, e.g., Microsoft*, 428 F. Supp. 2d at 193.  It would not be an efficient use of this Court's resources or Deutsche Bank's resources to conduct burdensome and expensive discovery before the foreign court has even been engaged.  Indeed, the German court may decide to take a number of actions in response to Petitioner's contemplated lawsuit, many of which could leave the entirety of the proposed Deutsche Bank production for naught.

14

That Petitioner has not yet filed its proceeding in Germany is also problematic as it deprives this Court the benefit of hearing from the German court regarding its receptivity to Petitioner's proposed discovery.  Indeed, numerous courts and Petitioner itself suggest that parties named in a § 1782 application should resort to assistance from the foreign court to either limit the discovery sought by a petitioner or to make its views known to the U.S. district court. Courts have stated that unless a district court receives clear evidence of a foreign court's objection, the district court should assume that the foreign court would be receptive to such assistance.  *See In re Application of Euromepa*, 51 F.3d 1095, 1100 (2d Cir. 1995) (finding that a district court's analysis of the foreign court's receptivity to § 1782 discovery should only be informed by "authoritative proof" or a "clear directive" from the foreign court).  Judge Posner of the Seventh Circuit instructed that a respondent objecting to § 1782 discovery should "have asked the [foreign] court for a ruling that would bar or limit [the petitioner's] U.S. discovery." *Heraus Kulzer v. Biomet*, 633 F.3d 591, 596 (7th Cir. 2011).

It is for this reason, no doubt, that Dr. Stefan Kraus, in his supplemental declaration supporting Petitioner's application, states that "[n]o German court or other ministry has forbidden the gathering of documents or testimony through an application for § 1782 discovery in this case or issued an order or finding that such would be contrary to German public policy or public interest."  (*Kraus Supp. Decl.*, ¶ 9.)  In *Kulzer,* Judge Posner noted that the respondent had two years to seek such assistance from the foreign court and failed to do so.  *Id.* at 596-97.  Of course, in this case, Petitioner has made it impossible for Deutsche Bank to seek such assistance from the German court by deliberately filing its application prior to bringing suit

in Germany.[2]  Given the premature nature of this § 1782 application, the second *Intel* favor also

weighs heavily against the use of § 1782.

> ### 3.   Whether the § 1782 request conceals an attempt to circumvent the foreign proof-gathering restrictions or other policies of a foreign country

The third *Intel* factor instructs that a § 1782 application should not be granted

where the application "conceals an attempt to circumvent foreign proof-gathering restrictions or

other policies of a foreign country."  542 U.S. at 265.  Petitioner apparently filed its § 1782

application prior to initiating an action in Germany for precisely this reason.  Petitioner's

proposed subpoena seeks broad discovery of sixteen categories of documents from Deutsche

Bank with no time limitation whatsoever, except for one request spanning a thirteen-year time

period.  (*Chepiga Decl.*, Ex. C.)  All of the documents that Petitioner seeks are located in Europe

and most are in the custody of a German company that Petitioner admits will be a defendant in

the future German proceeding.  (*See Mucke Decl.*, ¶ 4; *Butzke Decl.*, ¶ 4.)  § 1782 was not

intended to provide full U.S. discovery to a petitioner in such circumstances.  Instead, as Judge

Sullivan has recognized, § 1782 was intended to provide far more narrow and tailored assistance

to a petitioner.  *See Promnefstroy*, 2009 WL 3335608, at * 9 (S.D.N.Y. Oct. 15, 2009) (finding

that the petitioner's application for broad discovery "bears little resemblance to those cases in

which such applications were routinely approved—cases requesting a single document or report,

or even those documents relating to a single transaction or event").

---

[2]  While Petitioner has denied Deutsche Bank the opportunity to seek assistance from the foreign court, this Court may wish to consider Germany's unequivocal position regarding the use of documents in a proceeding in Germany that could be obtained abroad via the Hague Convention.  Upon its ratification of the 1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters in 1979, Germany declared, pursuant to Article 23 of the Hague Convention, that "it will not, in its territory, execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents known in common law countries."  (*See Chepiga Decl.*, Ex. E.)

Petitioner has informed this Court of certain limitations to the discovery available to parties in German court proceedings.  (*See Pet. Supp. Br.* at 2-3.)  However, § 1782 does not provide a license for a petitioner to supplant such discovery procedures and replace them with U.S. procedures in their entirety.  Such an application of the statute would usurp the authority of a foreign court that, in this case, has not even been engaged.  Moreover, in *Aventis Pharma v. Wyeth*, Judge Batts found that the petitioner's resort to § 1782 despite the selection of a foreign forum in the governing contract with the respondent revealed a clear attempt to circumvent the discovery restrictions of the foreign jurisdiction:

> Regardless of whether Aventis could have gotten the French Courts to compel production of the documents now sought, Aventis' motion is clearly an attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties' in the choice of forum (France) clause.  These sophisticated parties freely chose the French forum with all its requisite procedural rules.

No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (citation omitted); *see also Kulzer*, 633 F.3d at 595 ("Other things to watch out for are a forum-selection clause in a contract, which might indicate the parties' preference for a court system that doesn't contemplate the level of compulsory process available in America.").  This case is no different.  Petitioner's investment and entire business relationship with Oppenheim is governed by Oppenheim's "General Business Conditions."  (*Chepiga Decl.*, Ex. D.) ("The General Business Conditions govern the entire business relationship between the customer and the bank's domestic offices.") Section 6 of the General Business Conditions plainly provides that the business relationship between Petitioner and Oppenheim is governed by German law and that, in the event of a dispute between the two, Oppenheim may be sued "only before the court having jurisdiction for the bank office keeping the account."  (*Id.*)

As a sophisticated party, Petitioner freely chose that German law would govern its relationship with Oppenheim and that any disputes between the two would be resolved in

German courts.  Whatever discovery limitations may exist under German civil procedure,

Petitioner may not avoid such limitations by filing a § 1782 application prior to filing its action

in Germany.  In doing so, Petitioner does not conceal, but instead reveals a blatant "attempt to

circumvent foreign proof-gathering restrictions or other policies of a foreign country" and its

application is therefore improper.[3]  *Intel*, 542 U.S. at 265.  Petitioner's application should be

denied as it seeks not just to circumvent the procedural restrictions of a foreign jurisdiction, but

asks this Court to supplant Germany's discovery procedures and substitute them for U.S.

procedures in their entirety.

### 4. Whether unduly intrusive or burdensome requests should be rejected or trimmed

As discussed, § 1782 was intended to provide narrow assistance to a foreign

proceeding.  *See Promnefstroy*, 2009 WL 3335608, at * 9.  Petitioner's sixteen categories of

documents with no time limitation certainly do not fit within this intended purpose.  Petitioner

asserts that it only seeks "targeted information that is relevant to, or reasonably calculated to lead

to information relevant to, the issues of fraud, breach of contract, and breach of fiduciary duty in

the German civil action."  (*Pet. Br.* at 13.)  Here, Petitioner entirely ignores the undue burden

imposed on Deutsche Bank by Petitioner's proposed subpoena.  Petitioner also reveals the true

intent of its § 1782 application.  Petitioner does not seek the narrow assistance of U.S. discovery

---

[3]  To the extent courts have equated this factor with an analysis of a petitioner's bad faith, this factor would still weigh heavily against Petitioner.  *See, e.g.*, *In re Application of Minatec Finance*, Civ. No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) ("The primary issue for us is whether [petitioner] is pursuing this discovery in bad faith.").  Dr. Stefan Kraus, a partner in the German law firm of Luther Rechtsanwaltsgesellschaft mBH has submitted two declarations to this Court in support of Petitioner's application.  As will be discussed in the next section on the undue burden imposed by Petitioner's proposed discovery, Petitioner seeks the production of nearly twenty years of documents related to all forty-two Oppenheim-Esch funds rather than just the three funds in which Petitioner invested and which presumably will give rise to Petitioner's claims in the Contemplated German Proceeding.  The discovery of documents related to the other thirty-nine funds makes perfect sense, however, in light of a fact that Petitioner has failed to bring to the attention of this Court.  Dr. Kraus' law firm does not just represent Petitioner but also represents many other investors who have already brought actions in Germany against Oppenheim.  (*See Chepiga Decl.*, ¶ 3.)  Petitioner's attempt to obtain full U.S. discovery for use in actions other than Petitioner's constitutes "bad faith" under any reasonable understanding of that term.

procedures to obtain a single document or report or documents related to a single transaction. *See Promnefstroy*, 2009 WL 3335608, at *9.  Instead, Petitioner seeks full U.S. discovery of every document that conceivably may be relevant to its entire lawsuit in Germany, as well as the lawsuits of other investors in pending and potential actions in Germany.  (*See Chepiga Decl.*, at ¶ 3.)

On its own, Petitioner's first document request demonstrates the undue burden imposed by the discovery sought by Petitioner.  Petitioner seeks "[a]ll documents or communications relating to the creation, promotion, offering for sale, sale, management or operation of any of the Oppenheim-Esch funds."  (*Chepiga Decl.*, Ex. C.)  As Petitioner asserts in its application, Oppenheim began promoting the Oppenheim-Esch funds in the 1990s. (*Chepiga Decl.*, Ex. A.)  Moreover, "[i]n total, there were about 42 separate Oppenheim-Esch funds, into which investors made or committed to make investments of more than €4 billion." (*Id.*)  Petitioner therefore asks Deutsche Bank to search, collect, review and produce nearly twenty years of documents relating to the "creation, promotion, offering for sale, sale, management or operation" of the forty-two Oppenheim-Esch funds even though presumably, only documents relating to the three funds in which Petitioner invested would be relevant to Petitioner's Contemplated German Proceeding.  It is also not clear what documents, if any, that Oppenheim maintains in its ordinary course of business related to the forty-two Oppenheim-Esch funds would not be covered by this extremely broad request.

While it is impossible to know at this time how many documents will be responsive to this single request alone, Deutsche Bank easily could be required to produce millions of documents related to the Oppenheim-Esch funds.  Further, as such documents involve the business dealings between a German bank and its German clients, nearly all of the

documents will be in the German language and require translation into English for review by

U.S. lawyers and this Court.  Such a substantial production will also require the analysis of

German law experts to address the inevitable privilege issues raised by the documents sought by

Petitioner's subpoena.  The sheer volume of time and resources required for such translation,

document review and production in the United States would truly be an absurd result given that

the documents would then be immediately returned to Germany for use in a contemplated

lawsuit in the German courts.  This undue burden weighs heavily in favor of denying Petitioner's

application in its entirety.

### 5. The discovery sought by Petitioner will in no way vindicate the statutory intent of § 1782

Petitioner asserts that ordering the production of documents by Deutsche Bank

will vindicate the statutory intent of § 1782.  (*Pet. Br.* at 14-15.)  Petitioner misinterprets this

statute's purpose.  First, § 1782 plainly was not intended to reach documents located outside of

the United States.  *See, e.g., Godfrey,* 526 F. Supp. 2d at 423.  Petitioner claims that ordering the

production of documents located in Europe in the custody of a party to a future proceeding in

Germany will further the statute's "aims of demonstrating for foreign jurists the merits of the

American liberal discovery regime."  (*Pet. Br.* at 15.)  Numerous courts have recognized the

"twin aims" of § 1782: "providing efficient means of assistance to participants in international

litigation in our federal courts and encouraging foreign countries by example to provide similar

means of assistance to our courts."  *See, e.g., Microsoft*, 428 F. Supp. 2d at 193.  Of course, these

aims should be pursued in the context of assisting a foreign proceeding, not supplanting the

discovery procedures of that jurisdiction in their entirety.  The twin aims are not furthered when

the documents sought by Petitioner and the parties in possession of such documents are plainly

within the jurisdictional reach of the foreign court.  Nor are these aims furthered when Petitioner

seeks the production of nearly twenty years of documents held by a subsidiary of Deutsche Bank,

including documents that are plainly subject to various German law privileges.  There is a clear

difference between demonstrating the merits of U.S. discovery by assisting with limited requests

for documents beyond the reach of a foreign court and seeking full discovery in the United States

prior to initiating any action abroad.  This end-run around the German legal system and its

discovery procedures certainly will not vindicate the statutory intent of § 1782.

### III.   PETITIONER'S § 1782 APPLICATION SHOULD BE DENIED BECAUSE IT DOES NOT COMPORT WITH THE FEDERAL RULES OF CIVIL PROCEDURE

28 U.S.C. § 1782 expressly states that all discovery pursuant to the statute shall be

conducted "in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a).

Petitioner's application should be denied because its proposed subpoena for the production of

documents does not conform to the standards set forth in the Federal Rules of Civil Procedure.

First, the proposed subpoena is overly broad and unduly burdensome.  Second, the proposed

subpoena seeks the production of documents that can be obtained from a more convenient

source.  Third, the proposed subpoena seeks the production of documents that plainly are subject

to the attorney-client privilege as well as various other privileges under German law.

Federal Rule of Civil Procedure 45(c)(1) states that a "party or attorney

responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing an

undue burden or expense on a person subject to the subpoena."  Petitioner's subpoena fails to

comply with this directive.  First, except for one request limited to documents from the last

thirteen years, Petitioner has not limited its document requests to any time period.  (*Chepiga

Decl.*, Ex. C.)  In its first document request, Petitioner seeks "[a]ll documents or communications

relating to the creation, promotion, offering for sale, sale, management or operation of any of the

Oppenheim-Esch funds."  (*Id.*)  As discussed, Petitioner therefore asks Deutsche Bank to search,

collect, review and produce nearly twenty years of documents relating to the "creation, promotion, offering for sale, sale, management or operation" of the forty-two Oppenheim-Esch funds.  The staggering breadth of this request imposes both an undue burden and an undue expense on Deutsche Bank, especially considering the fact that Petitioner has not yet even filed an action in Germany.

   Similarly, Petitioner seeks "[a]ll documents or communications relating to Oppenheim's selection of potential investors in any of the Oppenheim-Esch funds."  (*Chepiga Decl.*, Ex. C.)  Once again, Petitioner does not limit the discovery it seeks to any particular time period nor to the three funds in which Petitioner invested.  Only in document request number twelve does Petitioner limit responsive documents to those from 2000 to the present.  (*Id.*)  Even this would require a substantial review of thirteen years of documents "relating to the creation, financing, management, or operation" of the funds in which Petitioner claims to have invested. (*Id.*)  As with document request number one, it is not clear what document concerning these three funds would not be responsive given the overly broad language of this request.  The lack of any attempt by Petitioner to limit the scope of its document requests indicates the impropriety of the discovery it seeks under the standards set forth by the Federal Rules of Civil Procedure.

   Petitioner's proposed subpoena is also improper under Federal Rule of Civil Procedure 26(b)(2)(C) which states that a Court must limit discovery if it determines that the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  The discovery sought by Petitioner plainly does not comply with this standard. With the exception of documents related to Deutsche Bank's due diligence and acquisition of Oppenheim in 2010, the vast majority of responsive documents are in the custody of Oppenheim and other potential defendants that Petitioner may name in the Contemplated German

Proceeding.  It certainly would be more convenient and less expensive to have the German

parties in the Contemplated German Proceeding collect, review and produce these documents

under the supervision of a German court rather than under the supervision of a U.S. federal

district court.

This is especially in true in this case in that Petitioner's document requests call for

the production of documents that are likely subject to various privileges under German law.

Neither Federal Rule of Civil Procedure 45 nor the statute itself requires a responding party to

produce privileged documents.  Fed. R. Civ. P. 45(3) ("the issuing court must quash or modify a

subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception

or waiver applies"); 28 U.S.C. § 1782(a)("A person may not be compelled to give his testimony

or statement or to produce a document or other thing in violation of any legally applicable

privilege.").  Many of Petitioner's requests call for the production of privileged documents.

Most prominently, document request number thirteen calls for the production of "[a]ny report or

draft report prepared by the Freshfields law firm analyzing the Oppenheim-Esch funds and all

documents reviewed in connection with such report or draft report."  (*Chepiga Decl.*, Ex. C.)

Petitioner seems particularly interested in the so-called "Freshfields Report".  (*Pet. Br.* at 3, 11.)

Plainly, this document request, along with other requests related to the 2010 acquisition, calls for

the production of documents subject to the attorney-client privilege.

Petitioner also seeks the production of documents that likely are subject to other

privileges governed by German law, including data protection, privacy and bank secrecy

privileges.  Should this Court grant Petitioner's § 1782 application, Deutsche Bank would have

to conduct a substantial and complex review of all documents prior to producing them to

Petitioner.  Inevitably, there will be disputes between the parties concerning the application of

German law privileges to certain documents.  For example, it seems that Petitioner may argue that Deutsche Bank has waived the attorney-client privilege covering the Freshfields Report.  It is clearly more logical and more efficient for such German law disputes to be resolved by a German court familiar with these privileges rather than a U.S. federal district court in New York.  This Court should reject Petitioner's attempt to require such a substantial review and production of documents by Deutsche Bank given the premature nature of this application and because a German court is certainly in a better position to decide disputes over German law privilege issues.

**CONCLUSION**

For the reasons stated above, Deutsche Bank respectfully requests that this Court

deny Petitioner's application for discovery in aid of a foreign proceeding pursuant to 28 U.S.C. §

1782 in its entirety.

Dated: April 15, 2013                                    ALLEN & OVERY LLP
       New York, New York

                                                     By:   /s/ Pamela Rogers Chepiga
                                                        Pamela Rogers Chepiga
                                                        Michael F. Westfal

                                                        1221 Avenue of the Americas
                                                        New York, New York 10020
                                                        Tel:  (212) 610-6300
                                                        Fax:  (212) 610-6399
                                                        pamela.chepiga@allenovery.com
                                                        michael.westfal@allenovery.com

                                                        *Attorneys for Respondent Deutsche*
                                                        *Bank AG*