UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
In re Application of:

KREKE IMMOBILIEN KG,

                       Petitioner,

To Issue a Subpoena to Deutsche Bank AG,
for Production of Documents and Testimony
for Use in a Foreign Proceeding
----------------------------------------X

**MEMORANDUM AND ORDER**

13 Misc. 110 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      On March 27, 2013, petitioner Kreke Immobilien KG ("Kreke")
applied to this Court for an order pursuant to 28 U.S.C. § 1782
("§ 1782") authorizing its attorneys to issue and serve
subpoenas upon respondent Deutsche Bank AG ("Deutsche Bank") for
the production of discovery in aid of a foreign proceeding.
Specifically, Kreke sought documents and testimony from Deutsche
Bank for use in connection with a lawsuit that it intended to
file in Germany against Deutsche Bank's wholly-owned subsidiary,
Sal. Oppenheim jr. & Cie. AG & Co. KGaA ("Oppenheim").
Subsequently, on July 26, 2013, Kreke moved to supplement the
record to indicate that it had filed suit against Oppenheim in
the district court of Cologne, Germany on May 21, 2013.
However, the substance of Kreke's discovery application to this

Court remained unchanged.   For the reasons set forth below, Kreke's application is denied.

## BACKGROUND[1]

Kreke is a German limited partnership that was formed to manage the real estate assets of the Kreke family.   Pet'r's Appl. ¶ 2.   Dr. Henning Kreke and Dr. Jörn Kreke, both German citizens, are the general partners of Kreke; its limited partners include Dr. Henning's four children, each of whom has U.S. citizenship.   Id.

Oppenheim is a German private bank engaged in asset management for institutional clients, private clients, and investment funds.   Id. ¶ 3.   Beginning in the 1990s, Oppenheim started promoting real estate investments in certain funds known collectively as the Oppenheim-Esch funds.   These funds were formed to purchase land, develop real estate on that land, and then manage those real estate projects.   Id. ¶ 4.

Beginning in 2000, Kreke decided to invest in three of Oppenheim's real estate investment funds.   Pet'r's Mem. at 5. According to Kreke, Oppenheim solicited its investment by

---

[1] The following facts are derived from Kreke's Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceeding ("Pet'r's Appl."), Kreke's Memorandum of Law in Support of its Application ("Pet'r's Mem."),  Kreke's Supplemental Memorandum of Law in Support of its Application ("Pet'r's Supp. Appl."), Deutsche Bank's Opposition to Kreke's Application ("Resp't Opp."), Kreke's Reply in Support of its Application ("Pet'r's Reply"), Kreke's Memorandum of Law in Support of its Motion for Leave to Supplement the Record ("Pet'r's Mem. 2d"), Deutsche Bank's Opposition to Kreke's Motion, and Kreke's Reply in Support of its Motion.

emphasizing that the funds were designed mainly for investment by partners and shareholders of the bank, though a small portion of them would be opened up to external investment for tax purposes. Pet'r's Appl. ¶ 9. However, Kreke maintains that the funds were ultimately marketed more extensively to outside investors than was advertised, subjecting them to more risk than could have been anticipated. Kreke further submits that Oppenheim made various other misrepresentations about the safety of investing in the funds. Id. ¶¶ 10-11. The petitioner claims that, as a result of Oppenheim's fraudulent conduct, the funds at issue now have present values of 35-70% less than the amount of capital that Oppenheim raised from investors. Id. ¶ 21.

Deutsche Bank acquired Oppenheim and made Oppenheim its wholly-owned subsidiary in March 2010, after Kreke had already invested in the Oppenheim-Esch funds. Id. ¶ 5; Pet'r's Mem. at 4. Kreke asserts that, while conducting the requisite due diligence for the acquisition, Deutsche Bank created and obtained documents that detail Kreke's investment in the Oppenheim-Esch funds. Pet'r's Appl. ¶ 7. Additionally, the petitioner believes that, by virtue of the parent-subsidiary relationship, Deutsche Bank now has control over all of the documents that are possessed by Oppenheim, including those that may describe the bank's allegedly fraudulent activities. Id.

3

On December 26, 2011, Kreke entered into formal mediation with Oppenheim in Germany. That mediation terminated without resolution on January 10, 2013. Id. ¶ 22. On May 21, 2013, Kreke filed suit in the District Court of Cologne, Germany, naming as a party Oppenheim, but not Deutsche Bank. Pet'r's Mem. 2d at 1-2. Although the copy of the complaint submitted to this Court was both incomplete and written in German, Kreke indicated in its March application that it intended to assert claims for fraud, breach of duty, and breach of contract in the German proceeding against Oppenheim. Pet'r's Appl. ¶ 23.

Kreke filed this § 1782 application to obtain documents from Deutsche Bank to assist in the German action against Oppenheim. Petitioner requests sixteen categories of documents that can be divided into two groups: (1) documents prepared by or for Deutsche Bank relating to the purchase of Oppenheim[2] and (2) documents detailing Oppenheim's continued management of all Oppenheim-Esch funds[3]. See generally Pet'r's Appl., Ex. B

---

[2] Requests include: documents relating to analysis by or for Deutsche Bank regarding any claims against Oppenheim or its employees; all documents made available to Deutsche Bank in connection with its acquisition of Oppenheim, located in both physical and "virtual" data rooms; reports that Deutsche Bank received from accounting firms and German banking regulators regarding the Oppenheim-Esch funds; any report prepared by the Freshfields law firm analyzing the funds; and any records, written or otherwise, of meetings between Deutsche Bank and Oppenheim that concerned the Oppenheim-Esch funds.
[3] Requests include documents relating to: the creation, promotion, offering for sale, sale, management or operation of the Oppenheim-Esch funds; meetings or communications with potential investors in the funds; internal analyses of the funds' performance; risk disclosures made to investors in the funds; fees or compensation received by Oppenheim itself in connection with the funds; fees or compensation received by any tenant in any Oppenheim-Esch funds

("Proposed Subpoena").   Kreke has applied to this Court for
discovery because "as a practical matter, German-style discovery
is limited to gaining access to documents whose contents are
already known to the applicant in great detail."   Pet'r's Supp.
Appl. at 3.   In order for the petitioner to obtain documents
that "generally pertain" to Oppenheim's alleged wrongdoing,
Kreke believes that its only "conceivable" approach is filing a
§ 1782 application with a U.S. district court.   Id.   The German
court has not, to this Court's knowledge, issued any ruling or
statement regarding this application.

## DISCUSSION

### I.   Legal Standard

A district court is authorized to grant a § 1782 request
when the petitioner demonstrates "(1) that the person from whom
discovery is sought reside[s] (or [is] found) in the district of
the district court to which the application is made, (2) that
the discovery [is] for use in a proceeding before a foreign
tribunal, and (3) that the application [is] made by a foreign or
international tribunal or any interested person."   Schmitz v.
Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir.
2004) (internal quotation marks omitted).   "Once the statutory
requirements are met, 'a district court is free to grant

---

project; selection of both investors for the funds and tenants for the
projects; and dealings between Oppenheim and Mr. Josef Esch in connection
with the funds in which Kreke invested, from 2000 to the present.

discovery in its discretion.'" Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012) (quoting Schmitz, 376 F.3d at 83-84); see also In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) . . . ."). Nonetheless, that discretion is "not boundless." Schmitz, 376 F.3d at 84. The Second Circuit has held that district courts must exercise their discretion in light of the twin aims of § 1782: "[(1)] providing efficient means of assistance to participants in international litigation in our federal courts and [(2)] encouraging foreign countries by example to provide similar means of assistance to our courts . . . ." In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997).

The Supreme Court provided further guidance for district courts in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). In that case, the Court listed additional factors, beyond the statutory requirements, that warrant consideration from a district court when ruling on a foreign discovery application. "First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter

arising abroad." Id. at 264. "Second, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Id. "[Third], a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States. [And fourth], unduly intrusive or burdensome requests may be rejected or trimmed." Id. at 264-65. In the years following Intel, the Second Circuit has evaluated district courts' exercise of discretionary authority over § 1782 applications by consulting these four factors. See, e.g., Brandi-Dohrn, 673 F.3d at 80-81; Schmitz, 376 F.3d at 84.

## II.  Analysis

### A. Statutory Factors

Kreke's application satisfies the mandatory requirements for discovery in aid of a foreign proceeding under § 1782. First, Deutsche Bank, the party from which discovery is being sought, is an entity operating a business within the Southern District of New York, where this application has been filed. Pet'r's Appl. ¶ 6. Second, the information sought is for use in the German proceeding commenced on May 21, 2013. See Pet'r's

7

Mem. 2d at 1-2.  And third, Kreke, as a party to the German proceeding, qualifies as an "interested person" under the statute.  Intel, 542 U.S. at 256.  Therefore, the petitioner has met the statutory requirements.

However, Deutsche Bank raises the additional threshold issue of whether the Court can, pursuant to § 1782, "permit the discovery of documents located outside of the United States, even where the statutory requirements are met."  Resp't Opp. at 5.  The respondent urges that to allow discovery here would be "an absurd result" that would render U.S. federal courts "clearinghouses" for global litigation.  Id. at 10.  Kreke counters that, given the electronic data storage practices of modern businesses, there is reason to believe that the "great bulk" of the documents requested could be accessed just as easily from New York as from anywhere else in the world. Pet'r's Reply at 5.  Further, the petitioner asserts that even if the documents were located abroad and were not accessible in New York, this fact should be a discretionary factor for the Court to weigh rather than function as a categorical bar to discovery.  Id. at 4-5.

The Second Circuit has not explicitly held that there is a bar to granting extraterritorial discovery pursuant to § 1782. However, the Court has noted that while "[o]n its face, § 1782

does not limit its discovery power to documents located in the
United States . . . , there is reason to think that Congress
intended to reach only evidence located within the United
States." In re Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997).
Within this district, opinion has been divided over whether §
1782 can compel parties to produce documents located outside of
the United States.   Compare In re Gemeinschaftspraxis, No. Civ.
M19-88 (BSJ), 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006)
("[A]bsent any express statutory language, the location of the
documents at issue should at most be a discretionary
consideration.") with In re Godfrey, 526 F. Supp. 2d 417, 423-24
(S.D.N.Y. 2007) (arguing that § 1782 should be limited to
discovery within the United States and that Gemeinschaftspraxis
misinterpreted the Supreme Court's Intel opinion) and In re
Microsoft Corp., 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006)
("[Section] 1782 does not authorize discovery of documents held
abroad.").

     This Court finds Judge Rakoff's analysis in Godfrey
compelling and agrees that "[t]he bulk of authority in this
Circuit" suggests that a § 1782 respondent cannot be compelled
to produce documents located abroad.   Godfrey, 526 F. Supp. 2d
at 423.   Given that this case arose out of conduct that took
place in Germany, that the parties are all located in Germany,

that all physical documents are in Germany, and that all electronic documents are accessible just as easily from Germany as from Deutsche Bank's offices in New York, "the connection to the United States is slight at best and the likelihood of interfering with [foreign] discovery policy is substantial." Godfrey, 526 F. Supp. 2d at 423. Thus, this Court finds that it would be inappropriate to compel Deutsche Bank, pursuant to § 1782, to produce the documents sought by Kreke, and the petitioner's application is therefore denied.

## B. Discretionary Factors

However, even if this Court were to take the approach suggested by Judge Jones in Gemeinschaftspraxis -- treating the foreign location of the documents as a discretionary consideration rather than as a categorical bar to § 1782 assistance -- adding this factor to those enumerated by the Supreme Court in Intel would lead this Court to the same conclusion: a denial of Kreke's application. Thus, for the sake of completeness, we now turn to the four Intel discretionary factors.

### 1. Respondent's Role in the Foreign Proceedings

The first Intel factor asks if the party from whom discovery is sought in the § 1782 application is also a party to the foreign proceeding. Intel, 542 U.S. at 264. If so, the

10

district court should be less inclined to grant the discovery request than if the respondent were a true nonparticipant.

When applied to this case, this factor supports Deutsche Bank's position.  To the extent that the petitioner seeks documents from Oppenheim -- and is only doing so through Deutsche Bank because Oppenheim is now its wholly-owned subsidiary -- discovery is fundamentally being sought from a participant in the German proceeding.  See Schmitz, 376 F.3d at 85 (noting that when the respondent in the U.S. proceeding is "technically" different than the defendant in the foreign litigation, but the two are really the same "for all intents and purposes," the first Intel factor cuts against granting the § 1782 application).  To the extent that Kreke seeks documents created by or on behalf of Deutsche Bank, since Deutsche Bank now wholly owns Oppenheim, which is the named party in the German proceeding, the notion that Deutsche Bank could somehow be a nonparticipant in the foreign action is untenable.

Moreover, when considering the first Intel prong, if "the documents or testimony sought by the application are within the foreign tribunal's jurisdictional reach," this fact should cut against allowing the discovery.  In re Application of OOO Promnefstroy, Misc. No. M 19-99(RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009).  Deutsche Bank is a German bank with

11

its official headquarters in Frankfurt am Main, Germany, and there is no allegation that any document requested here is beyond the reach of German jurisdiction.   Pet'r's Appl. ¶ 6. This is yet another reason why Kreke's need for our judicial assistance is "not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264.   Therefore, the first discretionary factor weighs strongly in favor of denying the application.

2.  **Nature of the Foreign Tribunal, Character of the Suit, and Receptivity of the Foreign Government**

The second Intel factor encourages the district court to consider how receptive the foreign tribunal is to receiving into evidence the fruits of the assistance from the U.S. court.   Id. In the absence of "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," a district court should err on the side of permitting discovery. In re Euromepa S.A., 51 F.3d 1095, 1100 (2d Cir. 1995); see also Gemeinschaftspraxis, 2006 WL 3844464, at *6.   Rather than deny a § 1782 request because it suspects that the evidence gathered would ultimately be rejected by the foreign tribunal, a U.S. district court should presumptively allow discovery to the extent that such a grant would promote the statute's goals of efficiency and comity.   See Euromepa, 51 F.3d at 1100.

In this case, Deutsche Bank has not suggested that the German district court is hostile to Kreke's discovery request, or that German tribunals in general are not amenable to § 1782 assistance.  In fact, when German courts have objected to § 1782 requests in the past, they have made their opposition clear.  See, e.g., Schmitz, 376 F.3d at 84 (detailing concerns that German authorities expressed to the U.S. district court about granting a § 1782 request).  It would be improper for this Court to deny assistance to Kreke based only on Deutsche Bank's suggestion that the German court may prove unreceptive to admitting the evidence.  See Resp't Opp. at 14-16.  Instead, when the district court has no evidence suggesting opposition from the foreign tribunal, the second Intel prong should count as "neutral or slightly favor[ing]" the petitioner.  Promnefstroy, 2009 WL 3335608, at *7.  Accordingly, the Court weighs this factor in favor of Kreke.

### 3. Circumvention of Foreign Proof-Gathering Restrictions or Other Policies

The third Intel factor suggests that a district court should be more inclined to deny a petitioner's discovery request when that request is little more than "an attempt to circumvent foreign proof gathering restrictions."  Intel, 542 U.S. at 265.  This is not the same as a foreign discoverability requirement; the fact that a § 1782 application requests documents that would

not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a "circumvention" of foreign rules. See Intel, 542 U.S. at 260; In re Servicio Pan Americano de Proteccion, 354 F. Supp. 2d 269, 275 (S.D.N.Y. 2004). However, this factor suggests that a district court should be vigilant against a petitioner's attempt to "replace a [foreign] decision with one by [a U.S.] court." Microsoft, 428 F. Supp. 2d at 195.

It is true that, in this case, Kreke has not received an adverse decision from the German court regarding its discovery request. In fact, there no indication that Kreke has sought these documents in Germany at all. But the petitioner suggests that its request here is proper because "German courts . . . simply lack the legal authority to order document production of the type requested in the Application, and authority cannot logically be 'supplanted' or 'usurped' where it does not exist." Pet'r's Reply at 7. Essentially, the argument seems to be that Kreke cannot be faulted for circumventing German rules if it just chooses not to engage with those rules in the first place.

But this Intel prong does not count against a petitioner only when that party has already had its request rejected by a foreign court. This factor also stands for the proposition that § 1782 was not intended "as a vehicle to avoid . . . an

14

unfavorable discovery decision" from a foreign tribunal. Microsoft, 428 F. Supp. 2d at 196 (emphasis added); see also In re Babcock Borsig AG, 583 F. Supp. 2d 233, 241 (D. Mass. 2008) ("While there is no 'exhaustion' requirement for seeking discovery under § 1782, the district court may, in its discretion, properly consider a party's failure to first attempt discovery measures in the foreign jurisdiction.").

It would create a perverse system of incentives -- one counter to the efficiency and comity goals of § 1782 -- to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority.[4] But that is precisely the sort of encouragement that the petitioner asks this Court to give. As discussed above, this is a case where a German petitioner is seeking discovery from a German respondent for use against a German defendant in a German proceeding. Because the locus of this action is so clearly in Germany and there is no suggestion that any documents sought are outside the jurisdictional reach of the German courts, this Court is concerned that Kreke's application is an

---

[4] The Court is not suggesting that this factor weighs in favor of denying Kreke's application because the German tribunal has not yet had a chance to review the discovery request; no such "quasi-exhaustion" requirement exists under § 1782. See Metallgesellschaft, 121 F.3d at 79. However, this situation is not one in which the German court has simply not had an "opportunity to consider" the petitioner's request. Id. Rather, it seems that Kreke is so certain that its request will be rejected in Germany that it has filed a § 1782 application in this Court without even giving the German tribunal any opportunity to rule. Exhaustion is one thing, but evasion is quite another.

15

attempt to circumvent foreign discovery procedures. Compare
Promnefstroy, 2009 WL 3335608, at *8 n.10 & *9 (finding that the
third Intel prong cut against discovery when the documents
concerned foreign companies and were "principally of a foreign
nature," even if the respondent had access to the documents in
the United States) with Pan Americano, 354 F. Supp. 2d at 274-75
(finding that the third Intel prong supported discovery when the
requested documents concerned an insurance claim filed in the
United States by a U.S. corporation that were then essential in
a foreign proceeding). In light of the overwhelmingly German
character of Kreke's discovery application, we are loath to
sanction forum shopping under the guise of § 1782.

Moreover, not only is Germany the natural forum for this
dispute, but Kreke already assented to foreign authority by
signing a contract with Oppenheim that contained a forum
selection clause.[5]   Resp't Opp. at 17.   Because the petitioner
previously agreed to a "[foreign] forum with all its requisite
procedural rules," an application of U.S. discovery protocol
here would evade foreign proof-gathering restrictions. Aventis
Pharma v. Wyeth, No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y.
Nov. 9, 2009); see also Heraeus Kulzer, GmbH v. Biomet, Inc.,

---

[5] Although the forum selection clause is part of the contract between Kreke
and Oppenheim, since it is our view that, in the context of this application,
Oppenheim and Deutsche Bank are the same for all intents and purposes, the
particular contracting parties are of no significance. See discussion supra
Part II.B.1.

633 F.3d 591, 595 (7th Cir. 2011) (suggesting that a forum selection clause selecting a foreign jurisdiction counsels against granting a § 1782 request under this <u>Intel</u> prong).

In sum, Kreke's § 1782 application has all the appearances of an attempt to circumvent German discovery rules, and thus this factor cuts against granting the petitioner's request.

### 4. Extent of the Burden on Respondents

Finally, the fourth <u>Intel</u> factor instructs courts to consider whether the request is "unduly intrusive or burdensome." <u>Intel</u>, 542 U.S. at 265. Recent cases suggest that courts should be more inclined to grant applications that seek either a single document or only those documents relating to a particular event. <u>See, e.g.</u>, <u>Promnefstroy</u>, 2009 WL 3335608 at *9 (rejecting a broad § 1782 application as overly burdensome); <u>Gemeinschaftspraxis</u>, 2006 WL 3844464, at *8 (approving an application seeking discovery that concerned the production of a single report); <u>Pan Americano</u>, 354 F. Supp. 2d at 275 (approving an application for "documents related to . . . insurance coverage for a single loss on a single day").

Here, Kreke has made an unquestionably extensive request. It has identified sixteen categories of documents in the application, fifteen of which are not even time-bound,[6] and there

---

[6] The one request that is time-bound still calls for thirteen years' worth of documents. See Proposed Subpoena ¶ 12.

is no territorial limit to the discovery sought.  See generally
Proposed Subpoena.  Overall, Kreke seems to be asking Deutsche
Bank to gather all of its documents relating to the acquisition
of Oppenheim, a €1 billion purchase.  And beyond those
documents, Kreke also wants a host of documents held by
Oppenheim that predate its absorption into Deutsche Bank, most
of which detail Oppenheim's past and current operations.  This
is an enormous demand that this Court is not inclined to grant.

Beyond the sheer scope of Kreke's discovery request, the
mechanics of implementing it would border on the absurd: while
many of the documents are surely available electronically, to
the extent that any exist in paper form, Deutsche Bank would
have to retrieve them in Germany, ship them to the United
States, turn them over to Kreke, and Kreke would then just take
the documents back to Germany.  See Kestrel Coal Pty. Ltd. v.
Joy Global, Inc., 362 F.3d 401, 402-03 (7th Cir. 2004)
(reversing a district court's grant of a § 1782 request when it
required that documents be shipped from foreign jurisdictions to
the United States, only to be returned again).  To the extent
that § 1782 values efficiency, allowing Kreke's request would be
contrary to, rather in support of, that goal.

Therefore, the likely burden associated with Kreke's
discovery request militates against granting its application.

## CONCLUSION

Accordingly, for the aforementioned reasons, Kreke's application for discovery in aid of a foreign proceeding pursuant to § 1782 is denied.  As explained, whether we apply a territorial analysis or a discretionary one, the result is the same.  We are aware of the expressed preference in some Second Circuit cases for narrowing a § 1782 request rather than wholesale denial.  However, given our analysis, such a modification of the request is simply not appropriate here.

The Clerk of the Court is respectfully directed to terminate the motions pending at docket numbers 1 and 21 and to close this case.

**SO ORDERED.**

DATED:     New York, New York
           November  8 , 2013

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

19

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Petitioner**
Leif T. Simonson, Esq.
Robert L. Schnell, Esq.
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

**Attorneys for Respondent**
Pamela Rogers Chepiga, Esq.
Michael F. Westfal, Esq.
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020